SECOND DIVISION

December 19, 2000 

No. 1-97-2295

ALLIANCE SYNDICATE, INC.,

Plaintiff, Counter-Defendant-Appellee,

v.

PARSEC, INC. and PARSEC, INC., as Indemnitor of CSX CORPORATION,

Defendants, Counter-Plaintiffs and Third-Party Plaintiffs-Appellants,

v.

ILLINOIS INSURANCE EXCHANGE,

Third-Party Defendant-Appellee,

v.

MARSH & McLENNAN, BURNS & WILCOX, and CLASSIC SYNDICATE, INC.,

Third-Party Defendants.

)))))))))

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable Albert Green,

Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

Following an accident in which Henry Smith was injured while working in a railyard, Smith brought suit against a number of entities, including Parsec, Inc. (Parsec).  Smith later entered into a $2.5 million settlement with Parsec and Parsec as indemnitor of CSX Corporation (CSX).  During the pendency of Smith's suit (the underlying case), plaintiff Alliance Syndicate, Inc. (Alliance) brought a declaratory judgment action against its insured, defendant Parsec, Inc. (Parsec), seeking a declaration as to Alliance's obligation to defend or indemnify Parsec in the Smith suit under a general liability insurance policy.  Parsec filed a counterclaim against Alliance and various other defendants, including third-party defendant the Illinois Insurance Exchange (IIE).  Alliance and the IIE filed motions for summary judgment on various counts in Parsec's third amended counterclaim.  Following a hearing, the circuit court entered summary judgment in favor of Alliance and IIE and against Parsec.  Parsec now appeals.
(footnote: 1)
 Parsec and the Baltimore & Ohio Railroad Company (the predecessor-in-interest to CSX) entered into an agreement (the Parsec/CSX agreement) under which Parsec was to load and unload freight containers at various rail yards.
  Under the terms of the Parsec/CSX agreement, Parsec was:

"(a) To indemnify, protect, defend and save harmless [CSX] from and against all loss, damages, costs and expenses, including attorneys' fees, claims, demands and causes of action on account of -

(i) injury to or death of all persons (including, but not limited to, employees of [Parsec and CSX]), and loss of or damage to any property ***, caused by or resulting in any manner from any acts, omissions or negligence of [Parsec] or any of [Parsec's] officers, agents or employees, in performing or failing to perform any of the services or duties on the part of [Parsec] to be performed under this Agreement.

* * *

(b) In the performance of the work hereunder, [Parsec] shall comply with all applicable federal and state laws and regulations with reference to Employers' Liability and Workmen's Compensation insurance, and when requested by [CSX] shall furnish proof of such compliance and shall indemnify, protect, defend and hold harmless [CSX] from and against any and all loss, damages, costs and expenses, including attorneys' fees, claims, demands and causes of action of whatsoever nature, due to the violation of such laws or regulations by [Parsec], or resulting from any claim of subrogation provided in such laws or regulations, or otherwise."

The Parsec/CSX agreement also required Parsec to provide general liability insurance coverage "in an amount of not less than $2,000,000 per occurrence for bodily injury and property damage liability," and required that such insurance name CSX as an additional insured.

Parsec, as part of the Budco Group, retained an entity known as Marsh & McLennan as its agent for the purpose of obtaining general liability insurance coverage for its various business entities, including the coverage required under the Parsec/CSX contract.  Marsh & McLennan was aware that Parsec was required to name the various railroads where it performed services as additional insureds under any policy issued.  Marsh & McLennan retained Burns & Wilcox, an insurance broker/wholesaler, to obtain coverage for Budco.  A copy of the Parsec/CSX agreement was included in the submission to Burns & Wilcox as an example of a typical contract entered into by Parsec.  Burns & Wilcox contacted the Illinois Insurance Exchange (IIE), a statutorily-created central processing facility for the placement of insurance risks with various separate member entities known as syndicates.  Burns & Wilcox then 
allegedly forwarded to various syndicate members of the IIE the application and supporting materials from Parsec via Marsh.  The Alliance Syndicate (Alliance) submitted a quotation for the primary general liability coverage of $1 million.  Burns & Wilcox forwarded the proposal to Marsh & McLennan.  Budco Group accepted the Alliance proposal and a policy was issued.  The policy, as issued, was in effect from May 4, 1987, to May 4, 1988, and did not name CSX or any other railroads where Parsec performed work as additional insureds.  The Classic Syndicate (Classic) provided a quotation for the excess coverage of $1 million.  That quotation was also accepted by the Budco Group.

The policy between Parsec and Alliance was written through the IIE.  However, the policy specified in Schedule A that the IIE was not a party to the insurance contract and had no liability thereunder.  The excess general liability policy between Parsec and Classic was obtained through the same channels and contained the same IIE liability disclaimer.

Under the Parsec/CSX agreement, Parsec was an independent contractor and was to supply all personnel and equipment to perform the contracted for loading and unloading operations.  Transpersonnel, Inc., in turn, had an agreement with Parsec to provide temporary workers.  
On August 12, 1987, Henry Smith, who had been hired by Transpersonnel approximately seven days earlier, was seriously injured in a rail yard accident when he was run over by a vehicle known as a spotting tractor.  A spotting tractor is a large vehicle used for moving and placing containers on and off of rail cars.

At the time of his accident, Smith was directly employed by, and received his paychecks from, Transpersonnel.  However, he was under the exclusive supervision and control of Parsec when he was injured at the railyard.  The spotting tractor that caused his injuries was owned by Parsec and was operated by a Parsec employee.  Although the accident happened at a rail yard owned by CSX Railroad, no CSX personnel were present when the accident occurred.

Following the accident, Smith proceeded to file suit against Parsec alleging, 
inter
 
alia
, careless and negligent acts and/or omissions and wilful misconduct on the part of Parsec.  After Smith filed the underlying case against Parsec, Parsec, with the acquiescence of Alliance, retained counsel for its defense.  Alliance then informed Parsec that if Smith were found to be a Parsec employee, Alliance believed an exclusion in the policy for bodily injury to employees of Parsec would apply and the policy would not provide any coverage to Parsec for liability assessed against it.  Alliance stated that it was thus providing a defense under a reservation of rights.

Other defendants, including CSX, were later added to the underlying Smith case.  The amended complaint in the Smith case sought recovery from CSX for negligence under the Federal Employer's Liability Act (FELA).  45 U.S.C. § 51 
et
 
seq.
 (1986).  The complaint alleged that CSX had committed a number of careless and negligent acts and/or omissions, including, among other things, failing to provide a safe workplace, failing to correct conditions which caused the existence of an unsafe workplace, permitting an unsafe yard tractor vehicle to be started, and failing to warn plaintiff and others of the condition of the yard tractor.

After the accident, Smith also filed a worker's compensation claim against Transpersonnel and workers' compensation payments were subsequently made.  Alliance, after learning that Parsec had instructed its attorneys to abandon a defense alleging that Smith was a Parsec employee and his sole remedy was thus under the Workers' Compensation statute, renounced its duty to defend or indemnify Parsec.  Parsec did eventually move for summary judgment in the underlying case, contending that Smith was a Parsec employee and that his sole remedy was through the Workers’ Compensation Statute.  Parsec’s motion was denied.

Alliance filed this declaratory judgment action against Parsec, alleging that the employee exclusion in the policy applied.  CSX, which had been named as a party in the Alliance action, filed a counterclaim for declaratory judgment against Parsec, contending that under the Parsec/CSX agreement, Parsec was obliged to indemnify CSX in the underlying case and was obliged to have provided CSX with liability insurance that would have covered CSX in the underlying case.  In an exchange of correspondence, Alliance declined the tender of defense of CSX because Alliance did not find CSX to be a named or an additional insured under the Alliance policy.  Alliance did, however, state that it would defend Parsec with regard to the CSX counterclaim.  Parsec then, apparently without consulting Alliance, accepted the CSX tender, agreeing to indemnify CSX in the underlying suit.  Parsec and CSX then brought a separate declaratory action against Alliance, seeking a declaration as to Alliance’s obligations to defend and cover Parsec and CSX in the underlying suit.  The Parsec/CSX declaratory judgment action was consolidated with the Alliance declaratory judgment action in the present case.

Alliance, when asked to participate in settlement discussions regarding the Smith litigation, reiterated its previous positions and declined to take part.  Alliance also reminded Parsec of provisions contained in the Alliance policy stating that no insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without the consent of Alliance and stating that Alliance may only be sued for the recovery of an agreed settlement (defined as a settlement signed by Alliance), or on a final judgment against an insured obtained after an actual trial.
  In February 1994, Parsec settled with Smith in the underlying case for $2.5 million: $500,000 on behalf of itself and $2,000,000 as indemnitor of CSX.  Parsec sought and received a good faith finding regarding the settlement from the trial court.  Parsec then sought indemnity coverage for the settlement pursuant to the insurance policy it had with Alliance.

Parsec's third amended counterclaim in the declaratory judgment action contained four counts directed against Alliance.  It also contained a count asserting that the IIE had negligently failed to notify Classic Syndicate, Parsec’s excess insurer, of the Smith claim.  Alliance filed a motion for summary judgment.  Third-party defendant the IIE filed a motion for summary judgment as well, contending that it owed no duty to Parsec with regard to claims handling.

The circuit court entered summary judgment in favor of defendant Alliance on Counts I, II, III, and IV of Parsec's third amended counterclaim and third-party complaint and in favor of defendant IIE on Count VIII of the third amended counterclaim and third-party complaint.  Parsec's claims against two other counter-defendants remained below and the court's grant of summary judgment in favor of Burns & Wilcox was not appealed.

Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 1996).  Where reasonable persons could draw divergent inferences from undisputed material facts or a dispute as to a material fact exists, summary judgment should be denied.  
Allstate Insurance Co. v. Smiley
, 276 Ill. App. 3d 971, 977, 659 N.E.2d 1345 (1995).  The standard of review on appeal from a grant of summary judgment is 
de
 
novo
.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

Count I.

Under Count I of its third amended counterclaim in this declaratory judgment action, Parsec maintained that where it was contractually obligated to indemnify CSX, Alliance owed Parsec as indemnitor of CSX the cost of defense of CSX and the cost of the indemnity of CSX assumed by Parsec.  Parsec thus sought reimbursement for $1 million of the settlement it paid in the Smith litigation as CSX’s indemnitor under the Parsec/CSX agreement.  The indemnity provisions of the Parsec/CSX agreement provide that Parsec will "indemnify, protect, defend and save harmless [CSX] from and against all loss, damages, costs and expenses" on account of bodily injury to all persons stemming from Parsec's work at the rail yard.  
The Parsec/CSX agreement further states that Parsec shall provide "General Liability Insurance coverage including a Contractual Liability Insurance coverage Endorsement covering obligations assumed by [Parsec] under this Agreement, in an amount of not less than $2,000,000 per occurrence for bodily injury and property damage liability," and that such insurance shall name CSX as an additional insured.  The Alliance policy obtained by Parsec does not name CSX as an additional insured.

The Alliance policy contains exclusions for bodily injury or property damage for which Parsec is obligated to pay damages by reason of the assumption of liability in a contract or agreement and for bodily injury to an employee of Parsec arising out of and in the course of employment by the insured.  Exceptions to the exclusions provide that the exclusions do not apply to liability for damages assumed by Parsec in a contract or agreement that is an "insured contract."  An insured contract is defined in the policy as, among other things:

"[t]hat part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of 'bodily injury' or 'property damage' to a third person or organization, if the contract or agreement is made prior to the 'bodily injury' or 'property damage.'  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."

The parties agree that the Parsec/CSX agreement was an insured contract as defined in the Alliance policy but disagree as to what that means in terms of coverage.  Alliance maintains that where CSX was not an additional insured under the policy, Alliance's obligation extended no further than a requirement to defend and indemnify Parsec for the claim made against Parsec by CSX under the terms of the indemnity clause of the Parsec/CSX agreement, an insured contract.  The record indicates that Alliance was willing to defend Parsec against the CSX counterclaim in the underlying case and informed Parsec of that fact.  Parsec, however, chose to instead accept the CSX tender.  Alliance then declined Parsec's tender of the defense of CSX, instead maintaining that Parsec had a valid defense against the CSX claim and that CSX was not a named or additional insured under the Parsec/Alliance policy.
  Parsec maintains that where it had agreed to indemnify CSX under an insured contract, and had accepted the tender of CSX' defense pursuant to the insured contract, the provisions in the policy obligated Alliance to cover the cost of defense of CSX and the liability of CSX assumed by Parsec.

On appeal, Parsec maintains that the circuit court, misled by Alliance, was incorrect in its reading and characterization of the relief sought in Count I of Parsec’s third amended counterclaim.  According to Parsec, the circuit court, in granting summary judgment, mistakenly thought Count I sought coverage for CSX directly, where it actually sought coverage for the liability of CSX which Parsec assumed under the Parsec/CSX contract.  The circuit court’s incorrect assumption, according to Parsec, led to the court to inaccurately state that Parsec, through its counterclaim, sought to expand the coverage of the policy.

Alliance, in its motion for summary judgment, alleged that Parsec's interpretation of the policy language constituted an expansion of what was intended.  The circuit court agreed with Alliance.  We have reviewed the record and do not find the Alliance motion to be misleading.  Further, we find that the circuit court did not err in its reading of the relief sought and correctly characterized Parsec's counterclaim as seeking to expand the policy coverage.  As noted by the court prior to making its findings, the file had been before the court for a long period of time and the court was therefore familiar with the issues involved.  The court did not err in its ruling simply by agreeing, as a matter of law, with Alliance's characterization of what Parsec sought in Count I of its counterclaim.  Where CSX was not an additional insured under the Alliance policy, the above exclusions applied.  The fact that the Parsec/CSX agreement was an "insured contract" did not expand the policy to automatically provide coverage for CSX or its liability, or impose any duty on Alliance to defend CSX in the underlying suit.  Instead, Parsec, as the insured, was covered for the liability it assumed under the insured contract.  Although the parties have not cited, and we have not found, an Illinois case with similar factual circumstances, 
Alex Robertson Co. v. Imperial Casualty & Indemnity Co.
, 10 Cal. Rptr. 2d 165, 168-71 (Cal. Ct. App. 1992)
, reached the same conclusions on similar facts.  
We conclude, based on our reading of the record, that where CSX was not an additional insured under the policy, Alliance satisfied its obligation to Parsec under the policy by offering to defend Parsec against the counterclaim by CSX.

Alliance has also raised other grounds upon which it urges us to affirm the court's grant of summary judgment on Count I.  Although Parsec contends that this court should not consider any reasons for affirming the grant of summary judgment beyond those considered by the court below, we note that this court may affirm a grant of summary judgment on any basis found in the record.  
Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.
, 292 Ill. App. 3d 131, 135, 685 N.E.2d 434 (1997); 
Monticello Insurance Co. v. Wil-Freds Construction, Inc.
, 277 Ill. App. 3d 697, 701, 661 N.E.2d 451 (1996).  The arguments raised here by Alliance were raised at some point below either through arguments, pleadings, or correspondence between the parties.  We will thus briefly address what we find to be other meritorious grounds for granting summary judgment in favor of Alliance.

Alliance first contends that no coverage for amounts paid by Parsec as indemnitor of CSX is available under the policy where Parsec has failed to show that Parsec was legally obligated to pay anything and settled the suit without Alliance's involvement.  The Alliance policy states that Alliance will pay sums the insured becomes legally obligated to pay as damages due to bodily injury or property damage to which the policy applies.  Later, the policy specifies that a person or organization may sue Alliance to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial.  An agreed settlement is defined as a settlement and release of liability signed by Alliance, the insured, and the claimant.  The record indicates that Parsec voluntarily assumed the liability of CSX and then proceeded to settle the Smith suit.  Although Parsec contends that it had no choice in either case, the record indicates otherwise.  Alliance, believing Parsec had a defense to the CSX claim, indicated its willingness to defend Parsec against the CSX counterclaim.  Later, Alliance stated that although it would listen to a reasonable proposal to settle the Smith litigation, it would not participate in settlement discussions under the circumstances as they then stood.  Further, in that same letter, dated a month prior to when settlement occurred, Alliance asserted that it would not be bound by any voluntary settlement made without the approval of Alliance and cautioned Parsec about provisions contained in the Alliance policy stating that no insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without the consent of Alliance and stating that Alliance may only be sued for the recovery of an agreed settlement (defined as a settlement signed by Alliance), or on a final judgment against an insured obtained after an actual trial.
  The settlement was not signed by Alliance.  
Parsec maintains in its reply brief that the required legal obligation was the indemnity clause in the Parsec/CSX contract, under which Parsec assumed a legal obligation to indemnify CSX.  In light of the plain language in the policy, we find that Parsec’s attempt to construe the indemnity provision as the necessary “legal obligation” fails.  
Here, where Alliance was not a party to the settlement and there was no finding that Parsec was legally obligated to pay $2 million as indemnitor of CSX
, the settlement amount was not a legal obligation to which the insurance policy applied, and Parsec is therefore barred from recovering from Alliance.  
We further find that where Alliance was otherwise in compliance with the terms of its policy and Parsec, against the wishes of Alliance, accepted the tender of CSX and then voluntarily settled the underlying suit, Parsec violated the provision in the Alliance policy stating that "[n]o insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, ***, without our consent."

Count II.

Parsec, in Count II of its third amended counterclaim, alleged that because Smith was not an employee of Parsec, Alliance had a duty to defend and indemnify Parsec from the negligence claims of Smith but had refused to do so.  Parsec asked the court to declare that Smith's claim against Parsec was a covered claim under the policy and asked that judgment against Alliance therefore be entered for $500,000.  
Alliance, in its motion for summary judgment, maintained that Parsec's liability in the Smith case was excluded from coverage by virtue of the employee exclusion found in the policy.  Parsec maintains on appeal that summary judgment was incorrectly granted on Count II of its third amended counterclaim because there was a question of fact as to whether Smith was an employee of  Parsec and because the Alliance policy was ambiguous in its definition of an "employee."

Initially, we note that Parsec, within its arguments regarding Count II, asserts that because Alliance "abandoned" its declaratory judgment coverage litigation regarding the employee status of Smith, Alliance should be estopped from raising policy defenses.  We find Parsec's contention in this regard to be unsupported by the record and without merit.

In the underlying case, Parsec attempted to assert the "exclusive remedy defense," maintaining that Smith was a Parsec employee and that his sole avenue of recourse was under the Workers' Compensation Act.  The court denied Parsec's motion for summary judgment in the underlying case, which was premised on the above defense.  According to Parsec, the denial of the motion meant that Smith's employment status was a question of fact for the jury.  Parsec maintains that the circuit court in the instant case could not then ignore the ruling in the underlying case and determine that Smith was an employee of Parsec when the accident happened.  Parsec claims that the trial court's denial of Parsec's motion in the underlying case made this issue either 
res
 
judicata
 or claims that collateral estoppel applies.  Alliance maintains that neither 
res
 
judicata
 nor collateral estoppel apply as Alliance was not a party to the underlying suit, Alliance was not in control of Parsec's defense in the underlying suit, and the underlying court's denial of a motion for summary judgment was not a final judgment, allowing the issue to be revisited by a subsequent court.

We find that Parsec reads too much into the circuit court's denial of Parsec's motion for summary judgment in the underlying case when it states that the court found that Smith was not, as a matter of law, an employee of Parsec.  The order in the record indicates only that the motion was denied.  There is no transcript of proceedings wherein the court detailed its reasoning.  We read the order denying Parsec's motion for summary judgment to simply mean that summary judgment on the employment issue, as it was presented to that court, was not appropriate.  Moreover, "an order denying summary judgment is interlocutory in nature and may be modified or vacated at any time."  
Burton v. County of Jackson
, 246 Ill. App. 3d 677, 681-82, 616 N.E.2d 662 (1993).  Interlocutory orders cannot form the basis for claims of either 
res
 
judicata
 or collateral estoppel.  See 
Ballweg v. City of Springfield
, 114 Ill. 2d 107, 113, 499 N.E.2d 1373 (1986) (collateral estoppel will not be applied where there has not been a final judgment on the merits); 
Lawrence & Allen
, 292 Ill. App. 3d at 137 (denial of summary judgment, being interlocutory, cannot form basis for a claim of 
res
 
judicata
).  We agree with Alliance that the trial court’s interlocutory order in the underlying case was not binding on the court in this declaratory judgment action.

Although the parties apparently agree that Smith was a Parsec employee under the "loaned servant" doctrine, Parsec next maintains that where the term employee was not defined in the Alliance policy, a question of fact exists as to whether Smith was a Parsec employee as that term was used in the policy.  In the alternative, Parsec contends that the ambiguity created by the lack of definition should be interpreted against Alliance and in Parsec's favor as the insured.  Alliance points out that Parsec stated in its original complaint for declaratory judgment that "[a]t the time and place of the injury to Smith which gave rise to the 
Smith
 case, Smith was not employed by CSX, but instead was employed by Parsec and working for Parsec at the railroad yard pursuant to [Parsec's] Agreement with CSX."  Further, the record before this court contains an affidavit from Parsec's Risk Manager attesting to the fact that Parsec had exclusive control over Smith at the time of the accident.  The circuit court in the instant case found that case law had more than adequately defined the term "employee" and the term was therefore unambiguous, especially in light of Parsec's admissions in the record that Smith was a Parsec employee.  The circuit court properly found that Smith, as a loaned servant, was a Parsec employee for purposes of the insurance policy and that the employee exclusion thus applied.
 We find no error in the circuit court's grant of summary judgment in favor of Alliance on Count II of Parsec's third amended counterclaim.

Having found that the circuit court correctly granted summary judgment on Count II where the employee exclusion in the policy applied, we need not address Parsec's contention that the court incorrectly held that the automobile exclusion applied.

Count III.

Count III of Parsec's third amended counterclaim seeks reformation of the contract of insurance with Alliance to reflect coverage for CSX as an additional insured.  In Count III, Parsec alleged that Alliance received all necessary information from Parsec via Marsh & McLennan and Burns & Wilcox to enable Alliance to provide a quotation for the requested insurance.  The counterclaim further stated that Parsec required that CSX be named as an additional insured, that Alliance had actual knowledge, through the application of insurance, that Parsec was contractually required to name CSX and other railroads as additional insureds under the policy, that Alliance failed to name CSX as an additional insured in the policy provided, and in failing to do so acted deceptively. 

In its motion for summary judgment, Alliance argued that the application for insurance it received from Marsh & McClennan did not include a request to make CSX an additional insured, that Alliance's submission of a quotation was the "offer" for purposes of the contract, and noted that its offer was accepted without a request that CSX be named as an additional insured.  The court below, finding that Alliance could not be held responsible for a request that was never communicated to it, granted Alliance summary judgment with regard to Count III.

On appeal, Parsec maintains that summary judgment should not have been granted on Count III because there are questions of fact relating to the application, quotation, and issuance of the policy.  To succeed in an action for contract reformation, a party must show, by strong, clear, and convincing evidence that there has been a meeting of the minds resulting in an actual agreement between the parties, that the parties agreed to reduce their agreement to writing, and, at the time that the agreement was reduced to writing and executed, some agreed upon provision was omitted or a provision not agreed upon inserted, either through mutual mistake or through mistake by one party and fraud by the other.  
Klemp v. Hergott Group, Inc.
, 267 Ill. App. 3d 574, 584-85, 641 N.E.2d 957 (1994).  Here, Parsec seeks reformation based on alleged deception by Alliance in failing to include CSX as an additional insured under the policy.  In analyzing such claims, courts have looked to whether the parties reached a mutual agreement and whether the allegedly deceiving party, knowing that the instrument finally prepared did not reflect that agreement, concealed the defect from the other party at the time of execution.   See 
Klemp
, 267 Ill. App. 3d at 585.

Parsec relies on the contents of the insurance "application" forwarded by Marsh & McLennan to Burns & Wilcox and, according to Burns & Wilcox, to Alliance.  The application states that there will be additional insureds under the policy and states that additional insureds are to be "[l]essors, employees and various incidentals; as well as the railroads for which they work."  The application also states that the Budco Group (Parsec) operates five railroad yards in Cincinnati, Ohio, Miami, Florida, Atlanta, Georgia, CSX Yard in Chicago, and the Chessie Yard in Chicago.  Finally, a copy of the Parsec/CSX agreement was included in the submission as an exemplar of the types of contracts Parsec enters into with the railroads for whom it performs work.

We disagree with Parsec's assertion that the above information creates a question of fact as to whether a request that CSX be named as an additional insured was forwarded to Alliance.  Nothing in the "application" specifies that CSX in particular is to be named as an additional insured.  The mention of the CSX yard is merely in the context of giving the locations where Parsec performed work.  The fact that CSX is mentioned in connection with rail yard locations at all appears to be more a reflection of the fact that work is performed at two yards in Chicago as opposed to the other cities where no railroad or yard is even specified.  The language regarding "additional insureds" does not suggest that CSX in particular should be named as an additional insured.  The included Parsec/CSX agreement, although specifying that Parsec is to obtain insurance under which CSX is named as an additional insured, was included merely as an example of a typical Parsec contract.  We thus find that not only is the record devoid of evidence of fraud, deceit, or concealment on the part of Alliance, it is devoid of evidence that a specific request was ever made to Alliance to name CSX as an additional insured.  The court below did not err in granting summary judgment in favor of Alliance on count III of Parsec's third amended counterclaim.

Count IV.

Parsec next maintains that the circuit court erred in granting summary judgment on count IV of Parsec's third amended counterclaim.  In count IV, Parsec alleged that Alliance had acted in bad faith in failing to participate in the settlement negotiations below and asked that Alliance thus be held liable for the total settlement amount of $2.5 million plus costs.  The circuit court, in granting summary judgment in favor of Alliance, held that it was "not bad faith for an insurer to refuse to settle a claim when the question of coverage is fairly debatable and when the grounds for refusal, if determined in the insurer's favor, would wholly excuse the insurer from any indemnity responsibility to the insured."  The court cited 
Stevenson v. State Farm Fire & Casualty Co.
, 257 Ill. App. 3d 179, 183-84, 628 N.E.2d 810 (1993), in support of this proposition.

We find that summary judgment was properly entered on count IV where, as discussed earlier, the question of coverage was debatable in that Alliance had valid defenses to coverage that have proved to have excused it from any responsibility to indemnify Parsec or Parsec as indemnitor of CSX in the underlying Smith litigation.  We note further that there was no evidence in the record that the Smith case could have settled for the $1 million limit of the Alliance policy.

Count VIII.

In Count VIII of its third amended counterclaim, Parsec sought recovery from the IIE for damages sustained as a result of the IIE having negligently failed to notify Classic Syndicate, Inc. (Classic), Parsec's excess insurer, of the Smith claim and in having failed to notify Parsec that IIE had not notified Classic.  According to Parsec, the IIE's failures of notification put Parsec in a position where Classic might successfully be able to have the claim against it dismissed due to the lateness of the notice received.

Following the accident in which Smith was injured, Parsec notified the IIE of a potential claim by Smith.  The letter notification referenced only the Alliance policy number and did not mention Classic.  The IIE responded via a letter informing Parsec that the notification information had been forwarded to the appropriate insuring entity.  The IIE letter further explained that the IIE acts only as a central processing facility for the placement of insurance risks with separate entities called Syndicates and that all underwriting and claims decisions are made solely by the Syndicate or Syndicates which insure the risk.  The letter goes on to alert Parsec that Alliance was the lead Syndicate on the policy and instructs Parsec on how to contact Alliance.  Finally, the IIE letter references Schedule A of the policy, which explains the IIE/Syndicate relationship and specifically states that the IIE "is not a party to this contract and has no liability hereunder."  Schedule A also states the name and address of a firm that is to be employed for the purpose of providing claim service with respect to any claim or suit under the policy.  After receiving the IIE letter, Parsec contacted Alliance and had no further contact with the IIE until 1994, when Parsec filed its third party complaint against the IIE.  There is no indication that Classic was aware of the Smith litigation until Parsec sued Classic in December 1994, seven years after the accident and five years after the commencement of the Smith litigation.

According to Parsec, a question of fact exists as to whether the IIE had a duty to notify Classic.  Initially, we note that the question of whether the IIE had a duty is clearly a question of law rather than fact.  See, e.g., 
Wingate v. Camelot Swim Club, Inc.
, 193 Ill. App. 3d 963, 966, 550 N.E.2d 665 (1990) ("The question of duty is a question of law to be determined by the court").

In granting summary judgment, the circuit court held that based on "the unambiguous language" of the policy and other evidence, "there can be no genuine issue of material fact as to the fact that IIE was not a party to the subject contract of insurance and has no liability thereunder."  Parsec, however, maintains that the duty breached by the IIE is found in the Illinois Insurance Code rather than in the policies themselves. 
 Under the Illinois Insurance Code, the powers and duties of the Board of Trustees of the IIE shall have "such power as may be necessary for the management and operations" of the IIE.  215 ILCS 5/107.15a (West 1996).  Further, the IIE is required to establish a facility for centralized record keeping, data collection, and statistical compilation of all insurance and reinsurance transactions involving a subscriber.  215 ILCS 5/107.21 (West 1996).  It is Parsec's opinion that the IIE's failure to notify Classic of the Smith accident was "a negligent breach of its statutory duty to maintain centralized data collection for the benefit of member syndicates."  We disagree.  After reviewing the relevant statutory sections, we find that the sections relied upon by Parsec do not in any way establish a legal duty on the IIE to notify member syndicates of accidents regarding their insureds.  "It is fundamental that there can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff."  
Fancil v. Q.S.E. Foods, Inc.
, 60 Ill. 2d 552, 554-55, 328 N.E.2d 538 (1975).  Here, where no duty has been established, summary judgment was properly granted.  See 
Wingate
, 193 Ill. App. 3d at 966.

Accordingly, the circuit court's grants of summary judgment in favor of Alliance on Counts I, II, III, and IV of Parsec's third amended counterclaim and third party complaint, and in favor of the IIE on Count VIII of same, are affirmed.

Affirmed.

McNULTY and COUSINS, JJ., concur.

FOOTNOTES
1: We note that after oral arguments had taken place on this case, this court granted Alliances's motion to spread of record an agreed order of liquidation with a finding of insolvency and injunctive relief entered by the circuit court.