ORDER
Sears, Roebuck and Co. (“Sears”) filed a complaint for breach of contract and declaratory judgment against Royal Surplus Lines Insurance Co. (“Royal”). It claimed that Royal wrongfifily had refused to defend and indemnify Sears in an underlying products liability action filed in a state court in California. The district court granted summary judgment in favor of *281 Royal; it concluded that Royal owed no duty to defend or indemnify Sears. For the reasons set forth in the following order, we affirm the judgment of the district court.
1.
In January of 1996, Sears contracted with Roadmaster Corporation (“Roadmaster”), a manufacturer of bicycles and other products, for the purchase of bicycles. Roadmaster would manufacture the bicycles and sell them to Sears for resale in its stores. This contract between Sears and Roadmaster contained an indemnity provision, which provided:
Seller agrees to protect, defend, hold harmless and indemnify Purchaser ... against any and all claims, actions, liabilities, losses, costs and expenses (including attorneys’ fees) ... (2) arising out of any actual or alleged death of or injury to any person, damage to any property, or any other damage or loss, by whomsoever suffered, resulting or claimed to result in whole or in part from any actual or alleged defect in such merchandise, whether latent or patent, including actual or alleged improper construction and/or design.
R.19, Ex. E. The contract also obligated Roadmaster to obtain and to maintain, at Roadmaster’s expense, a product liability insurance policy naming Sears as an additional insured. Under this provision, Roadmaster also was required to notify Sears in writing thirty days before any termination of insurance coverage.
In January of 1997, Royal issued a Commercial General Liability Insurance policy to Roadmaster, designated policy number KHA010968 (“Policy 968”). Policy 968 extended coverage to Sears by listing as an additional insured “[a]ny person or organization to whom or to which you [Roadmaster] are obligated by an ‘insured contract’ to provide insurance such as is provided by this policy.” R.19, Ex. F (Policy 968, Endorsement No. 5).
At Roadmaster’s request, Royal later moved insurance coverage for certain Roadmaster products, including the bicycles in question, to another pre-existing policy, designated policy number KHA010639 (“Policy 639”). Sears was not included as an additional insured in Policy 639.[1] An endorsement in Policy 968, entitled “Cross Exclusion,” stated that the policy no longer afforded coverage for products covered by Policy 639. R.19, Ex. F (Policy 968, Endorsement No. 9). Policy 639 contained an “insured contract” provision, which insured Roadmaster for its contractual indemnity obligations, such as the ones that ran to Sears under the Road-master-Sears purchase contract. Sears was not advised of the change in coverage. On August 29, 1997, Roadmaster filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia.
The following August, Joseph Battaglieri filed a complaint against Sears in California state court. He alleged that, on August 7, 1997, he was injured while riding a Roadmaster bicycle that he had purchased from Sears in October of 1996. Because Roadmaster already was in bankruptcy, all claims against it were barred and/or automatically stayed. Accordingly, Roadmaster was not, and could not have been, named as a defendant in the Battaglieri state court action. In January of 1999, Sears filed a proof of claim in the Road-master bankruptcy; however, Sears was *282 otherwise prevented from suing Roadmaster for breach of contract or for failure to indemnify.
Sears tendered its defense of the Battaglieri action to Royal and requested that Royal indemnify Sears for any liability it incurred as a result of the action. Sears claimed that Royal was responsible to Sears based on the indemnity agreement between Roadmaster and Sears. In April of 2000, Royal advised Sears of the possibility that there would be no coverage under the Roadmaster policy because Sears was not an additional insured under Policy 639. Royal nevertheless participated in the mediation of the Battaglieri lawsuit, while reserving its right to seek a judicial determination of its liability to Sears.
On June 7, 2000, a settlement was reached with Battaglieri in the amount of $650,000. The terns of the settlement released Sears and Roadmaster from future liability. Sears and Royal agreed that each would contribute $325,000 toward the settlement, subject to the condition that the two parties would later resolve their dispute over whether Policy 639 provided coverage.
On November 9, 2000, Sears filed suit against Royal, claiming that Royal was responsible to Sears for attorneys’ fees and the money that Sears had paid to settle the Battaglieri action. Royal denied any responsibility to Sears because it was not an additional insured under Policy 639. Accordingly, Royal filed a counterclaim seeking a declaratory judgment that it had no liability to pay for losses or attorneys’ fees that Sears incurred from the Battaglieri action. Royal also sought reimbursement from Sears for the $325,000 Royal contributed to the settlement.
On November 9, 2001, the district court granted summary judgment in favor of Royal. First, the district court concluded that there was “no evidence to support Sears’ allegation that Royal in bad faith, surreptitiously [had] attempted to defeat Sears’ right as a third-party beneficiary” by moving coverage for Roadmaster’s bicycles from Policy 968, under which Sears was an additional insured, to Policy 639, under which Sears was not an additional insured. R.31 at 9 (internal quotations omitted). Second, the district court concluded that Sears offered “no authority for the notion that third-party beneficiary status continues once the third party is removed from the contract.” Id. Finally, relying on Alliance Syndicate, Inc. v. Parsec, Inc., 318 Ill.App.3d 590, 251 Ill.Dec. 861, 741 N.E.2d 1039 (2000), the district court concluded that, when a party is not listed as an additional insured under the policy, the insurer’s obligation to indemnify extends only to the named insured. See id. at 11. Applying this rule to Sears’ case, the district court determined that Royal owed no duty to Sears. See id. at 11-12. The district court recognized that “Roadmaster’s failure to add Sears as an additional insured in violation of the original bicycle sales contract and its subsequent Chapter 11 filing leave Sears in a difficult position,” but held that “these events create no basis for a claim against Royal.” Id.

2.

On appeal, Sears argues that the district court erred when it relied on Alliance Syndicate to conclude that Sears could not recover the $325,000 it paid in settlement of the Battaglieri action (and that it must reimburse Royal for the $325,000 that it paid) because Sears was not an additional insured under Pohcy 639. According to Sears, Alliance Syndicate is not controlling in this case because Sears was barred from suing Roadmaster due to its bankruptcy. Royal, on the other hand, main *283 tains that Alliance Syndicate is directly on point and dispositive of the instant matter.
In Alliance Syndicate, the insured, Parsec, entered into an agreement with CSX to load and unload freight containers at various rail yards. Under the terms of the Parsec-CSX agreement, Parsec agreed to defend and indemnify CSX for any loss resulting from its work under the contract. See Alliance Syndicate, 251 Ill.Dec. 861, 741 N.E.2d at 1041-42. The agreement also required Parsec to obtain general liability insurance coverage and required that such insurance name CSX as an additional insured. See id. at 1042. Parsec acquired general liability insurance coverage from Alliance, but failed to include CSX as an additional insured. See id.
Later, when a rail yard worker was injured, the worker sued both Parsec and CSX. Parsec, without consulting Alliance, settled the underlying case on behalf of itself and as indemnitor of CSX. See id. at 1044. Parsec then sought indemnity for the settlement under its insurance policy with Alliance. In Parsec’s view, because it was obligated contractually to indemnify CSX, its policy with Alliance covered the cost of defense of CSX and the cost of the indemnity of CSX.
CSX was not named as an additional insured under the Alliance policy obtained by Parsec. However, the Alliance policy contained an endorsement that insured Parsec for indemnity obligations arising from an “insured contract.” Id. at 1045. The policy defined an insured contract as “that part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of ‘bodily injur/ or ‘property damage’ to a third person or organization, if the contract or agreement is made prior to the ‘bodily injur/ or ‘property damage.’ ” Id.
The parties agreed that the Parsec-CSX agreement was an “insured contract” as defined in the Alliance policy. They disagreed, however, about Alliance’s contractual duty to cover such an obligation. Alliance maintained that “where CSX was not an additional insured under the policy, Alliance’s obligation extended no further than a requirement to defend and indemnify Parsec for the claim made against Parsec by CSX under the terms of the indemnity clause of the Parsec/CSX agreement, an insured contract.” Id. Parsec, on the other hand, maintained that “where it had agreed to indemnify CSX under an insured contract, and had accepted tender of CSX’[s] defense pursuant to the insured contract, the provisions in the policy obligated Alliance to cover the cost of defense of CSX and the liability of CSX assumed by Parsec.” Id. In Alliance’s view, Parsec’s interpretation of the policy constituted an impermissible expansion of the parties’intent. Id.
The Illinois Court of Appeals rejected Parsec’s position. The court held that, even though the Parsec-CSX agreement was an “insured contract,” this fact “did not expand the policy to automatically provide coverage for CSX or its liability, or impose any duty on Alliance to defend CSX in the underlying suit.” Id. The court further held that “where CSX was not an additional insured under the policy, Alliance satisfied its obligation to Parsec under the policy by offering to defend Parsec [the named insured] against the counterclaim by CSX.” Id.[2]
*284 After reviewing the Illinois Court of Appeals’ decision in Alliance Syndicate, the district court concluded that “[a]part from the fact that Roadmaster, the named insured, is in bankruptcy, the situation here is nearly identical to the situation in Alliance Syndicate. ” R.31 at 11. The district court explained:
For reasons not significant to the outcome, Sears was not listed as an additional insured on the policy obtained by Roadmaster. That policy requires Royal only to pay damages incurred by the insured and does not require Royal to cover the losses suffered by Sears. As in Alliance Syndicate, the extension of Royal’s coverage to Sears, which was not listed as an additional insured under Policy 639, would unduly expand the scope of the original contract.
Id. The district court acknowledged that “Roadmaster’s failure to add Sears as an additional insured in violation of the original bicycle sales contract and its subsequent Chapter 11 filing leave Sears in a difficult position,”.but the court concluded that “these events create no basis for a claim against Royal.” Id.
3.
The district court’s analysis is correct. In our view, Alliance Syndicate stands for the unremarkable proposition that an insurer’s obligation to indemnify extends only to parties identified in the policy as a named or additional insured. Because Sears was not an additional insured under Policy 639, Royal was under no obligation to indemnify Sears for the money it paid in settlement of the Battaglieri action. Sears provides no authority to support its assertion that we should not adhere to Alliance Syndicate in this case because Sears was prevented from suing Roadmaster due to its bankruptcy. Although Roadmaster’s bankruptcy places Sears in an unfortunate position, we do not believe that this fact creates a basis for imposing liability on Royal.
4.
Sears next submits that, at a minimum, Royal is barred from recovering from Sears the $325,000 it paid in settlement of the Battaglieri action. In this regard, Sears points out that the release executed by Battaglieri and his counsel released Roadmaster, as well as Sears, from future liability. See R.19, Ex. N. Sears contends that “fundamental unfairness [ ] would result if Sears were required to pay Battaglieri to obtain his release of Roadmaster from liability in the face of the purchase and indemnity agreement between Sears and Roadmaster which mandated precisely the opposite result.” Appellant’s Br. at 16-17. Royal, on the other hand, points out that “at no time did Royal fund the settlement to settle Roadmaster’s liability” in the Battaglieri action. Appellee’s Br. at 16. In its view, “it defies logic as to why Royal would fund a settlement for its insured, Roadmaster, when Road-master was, by Sears own admission, immune from any exposure due to the bankruptcy proceedings.” Id. Royal further states that “[i]t cannot be credibly disputed that what happened in the Battaglieri case is that Royal and Sears reached an agreement to cap Sears’ potential exposure and then decided to later resolve whether Sears is covered under Policy 639.” Id. at 17.
We believe that the record demonstrates that Sears and Royal each agreed to pay $325,000 in settlement of the Battaglieri *285 action, subject to the condition that the two parties would later resolve their coverage dispute over whether Policy 639 covered the settlement.[3] Sears provides no authority to support its argument that Royal is barred from recovering the $325,000 that it paid in settlement of the Battaglieri action because Roadmaster, as well as Sears, was released from future claims. Any injustice to Sears is not attributable to any actions by Royal. Rather, it is a direct result of Roadmaster’s failure to add Sears as an additional insured under its policy with Royal and Roadmaster’s subsequent bankruptcy.
Conclusion
Because Sears was not covered under Policy 639, we must conclude that Royal is entitled to recover the sum it paid in settlement of the Battaglieri action. Accordingly, the judgment of the district court is affirmed.
AFFIRMED

. Roadmaster is listed in Policy 639 as the only named insured and Brunswick Corporation is listed as the only additional insured.

. We note that the Illinois Court of Appeals' decision in Alliance Syndicate is consistent with opinions from other state appellate courts. As noted by the court in Alliance Syndicate, the California Court of Appeals reached the same conclusion on similar facts in Alex Robertson Co. v. Imperial Casualty & Indemnity Co., 8 Cal.App.4th 338, 10 Cal *284 .Rptr.2d 165 (1992). The court’s holding in Alliance Syndicate also is consistent with the New York Court of Appeals’ decision in Jefferson v. Sinclair Refining Co., 10 N.Y.2d 422, 223 N.Y.S.2d 863, 179 N.E.2d 706 (1961).

. The release signed by Battaglieri and his counsel specifically stated that it did "not apply to any dispute which may exist exclusively between Defendant, SEARS, ROEBUCK AND CO., ROADMASTER CORPORATION ... or their insurers.” R.19, Ex. N at 2-3. In a letter dated April 27, 2000, Royal notified Sears that coverage may not exist and reserved its "rights to reimbursement to any and all sums paid for indemnity or defense costs to the extent it is determined that Royal had no obligation to provide coverage for [the Battaglieri] claim.” R.16, Ex. H. Subsequent correspondence from Royal to Sears confirmed the parties’ understanding (1) that each party would pay $325,000 toward settlement of the Battaglieri action; (2) that Sears would file suit in the Northern District of Illinois for "purposes of determining the respective rights, duties, and obligations of Royal, Roadmaster and Sears” under Policy 639; and (3) that neither Royal nor Sears would “be bound to any court award of damages, interest, costs or expenses in excess of the total settlement amount paid to [Battaglieri], nor to any court award of ... relief beyond a determination as to the allocation between Royal and Sears for payment of the settlement amount." R.19, Ex. M.