Brady, Patrick F., J.

INTRODUCTION

The Plaintiff, Raytheon Engineers and Constructors, Inc. (“Raytheon”), brings this action against Erie Interstate Contractors, Inc. (“Erie”), TIG Insurance Company (“TIG”), and General Star National Insurance Company (“General Star”). In May 2006, a multimillion dollar judgment entered against Raytheon in a personal injury action brought by David Hathaway (“Hathaway”) and others. Raytheon now asserts that, with respect to the judgment, it is entitled to contractual indemnity from Erie (Count I), TIG (Count III), and General Star (Count VI). Raytheon also seeks declaratory relief against TIG (Count III) and General Star (Count V) and asserts that they have violated M.G.L.c. 93A and M.G.L. 176D (Counts IV[2] and VII). TIG and General Star now move to dismiss Raytheon’s claims against them pursuant to Mass.R.Civ.P. 12(b)(6). Erie moves to stay Raytheon’s actions against TIG and General Star. For the reasons discussed below, TIG and General Star’s motions to dismiss are ALLOWED.

BACKGROUND

A. The Hathaway Action

On April 29, 1997, David Hathaway, an Erie employee, was injured when he fell while performing work on the Tobin Bridge. At the time, Erie was performing lead removal services and repainting the bridge pursuant to a contract with the Massachusetts Port Authority (“Massport”). Raytheon was performing engineering services in connection with the Tobin Bridge project pursuant to a contract with Massport. Hathaway brought a negligence action against Ray-theon, Massport, and another entity. The Hathaway action went to trial in 2006 and the jury found Ray-theon liable on Hathaway’s negligence claim. Hathaway’s theory was that Raytheon, by contract, assured a duty to safeguard the work site and then negligently performed that duty. Based on this verdict, a judgment entered against Raytheon in the amount of $7,950,000.
Paragraph 56 of the Erie-Massport contract provides:
[Erie] shall indemnify and save harmless [Massport] and all of its representatives from all suits, actions, or claims of any character brought on account of any injuries or damages sustained ... by any person ... in consequence of any neglect in safeguarding the Work . . . ; or through the use of unacceptable materials in the construction of the Work . . . ; or from any claims arising from the violation of any law, bylaw, ordinance, regulation, order, or decree, whether by the Contractor *121 her/himself, his subcontractors, or by; his/her or their employees.
Raytheon has taken the position that it was a “representative of Massport” and, as such, Erie owes it indemnity with respect to the Hathaway claim.
B. The TIG and General Star Policies
TIG issued a commercial general liability policy to Erie (Policy No. 37264003) with limits of $1,000,000 per occurrence, $2,000,000 aggregate (the “TIG Policy”), and coverage dates encompassing Hathaway’s accident. General Star issued an umbrella policy to Erie (Policy No. NUG-338758A) with a limit of $5,000,000 per occurrence, that also insured Erie at the time of Hathaway’s fall. Based on certain provisions of the TIG policy, Raytheon claims that it is entitled to contractual indemnity from TIG. Since the General Star policy provides coverage to the extent that it is available under the TIG Policy, Raytheon also seeks indemnity from General Star.
The TIG Policy, portions of which are attached to Raytheon’s second amended complaint,[3] provides, “(w]e will pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies. We will have the right and duty to defend any ‘suit’ seeking those damages.” The policy covers liability assumed in an “insured contract,” defined as:
That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for “bodily injury” or “property damage” to a third person... Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.[4]
Raytheon argues that it is entitled to defense costs and indemnity from TIG and General Star because the Erie-Massport contract is an “insured contract” for purposes of the TIG policy. Moreover, Raytheon notes that TIG assumed a duty to defend “any suit” seeking damages to which the policy applies, as opposed to any suit “against Erie.” Based on this broad language, Raytheon claims that TIG must indemnify it with respect to the Hathaway judgment and defense costs.
C. Dealings Between the Parties
On June 10,2004, before the Hathaway action went to trial, Raytheon made a formal demand on TIG for defense and indemnification. TIG disclaimed coverage. Raytheon made another demand for defense and indemnify upon TIG and Erie on August 31, 2006, and TIG again denied coverage.
On June 1, 2007, Raytheon sent a 93A/176D demand letter to TIG in which it asked TIG to provide a copy of the policy it issued to Erie; to tender the full limit of the policy; and, if TIG again disclaimed coverage, to provide a written explanation of the facts and policy provisions on which it relied. Raytheon also sought copies of all communications concerning the Hathaway matter between TIG and General Star. TIG responded on July 3, 2007, by sending portions of the TIG-Erie insurance policy. On July 20, 2007, Ray-theon renewed its request for coverage and relevant TIG-General Star communications.
Also on June 1, 2007, Raytheon sent a letter to General Star seeking the full limits of the umbrella policy it issued to Erie. General Star denied coverage and Raytheon responded with a 93A/176D demand letter on July 20; 2007. Raytheon also requested copies of any General Star communications involving the Hathaway case. After General Star failed to respond, Raytheon renewed its request on August 1, 2007. General Star did not respond.

DISCUSSION

With respect to the Hathaway claim, Raytheon seeks contractual indemnify from and declaratory relief against TIG.[5] It also brings a 93A/176D claim. To defeat TIG’s motion to dismiss, Raytheon essentially makes two arguments: (A) That the second amended complaint states a claim against TIG because it alleges that Raytheon is an additional insured under the TIG Policy; and (B) even if Raytheon is not an additional insured, it may recover from TIG because Erie owes Raytheon indemnify with respect to the Hathaway action, and the indemnify agreement is covered under the TIG Policy because it is an “insured contract.”

A. Has Raytheon Alleged that It Is an Additional Insured under the TIG Policy?

TIG maintains that Raytheon has no rights in the TIG Policy because Raytheon concedes that it is not an additional insured in Exhibit D of its second amended complaint. There, Raytheon alleges that Erie violated the Massport-Erie contract by failing to name Raytheon as an additional insured. However, in a 2007 letter to TIG’s counsel — attached to the second amended complaint as Exhibit L — Raytheon relates that it “would not concede” that it is not an additional insured.
Although Raytheon is entitled to bring inconsistent claims pursuant to Mass.R.Civ.P. 8(e)(2), nowhere in the second amended complaint does Raytheon allege that it is an additional insured or that TIG issued it a certificate of insurance, as required by the plain terms of the policy. Raytheon’s letter informing TIG that it would not concede this fact does not equate to an allegation that Raytheon is an additional insured. Moreover, the second amended complaint alleges that TIG owes coverage because Erie’s indemnify obligation to Raytheon is an “insured contract.” This would put TIG on notice that Raytheon is proceeding, not as an additional insured, but as a third-party beneficiary to the TIG Policy. Consequently, Raytheon’s argument *122 that the second amended complaint alleges additional insured status falls short.

B. Can Raytheon Recover as a Third-Party to the TIG Policy?

Raytheon asserts that, as a representative of Massport, Erie owes it indemnity with respect to the Hathaway judgment. Raytheon claims that it may bring a direct action against TIG because the Erie-Massport contract is an “insured contract” for purposes of the TIG Policy and the policy obligates TIG to indemnify for sums that the insured becomes legally obligated to pay as damages and defend any suit seeking those damages. To survive TIG and General Star’s motions to dismiss, Raytheon must allege: (1) that it is a “representative” of Massport and, therefore, is a beneficiary of the Erie-Massport indemnification clause; (2) that the Erie-Massport contract is an “insured contract” under the TIG Policy; and (3) that TIG owes Raytheon a duty to defend and indemnify even though Raytheon is not a named or additional insured under the TIG Policy.
For purposes of this motion, I will assume that Raytheon is an indemnitee under the Erie-Massport contract and that the Erie-Massport contract is an “insured contract.” The question remains, however, whether TIG owes any duty to a parfy that is not a named or additional insured under the policy. It is axiomatic that “a liability insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity.” Doe v. Liberty Mutual Ins. Co., 423 Mass. 366, 368 (1996) (emphasis added). Ray-theon cites no authority for the proposition that a duty to defend or indemnify extends to entities who enter into “insured contracts” with the insured. Although no Massachusetts court has squarely addressed this issue, appellate authority from other jurisdictions, in factually similar cases, holds that it does not. See Jefferson v. Sinclair Refining Co., 179 N.E.2d 706 (N.Y. 1962); Tremco, Inc. v. Manufacturers Association Insurance Co., 832 A.2d 1120 (Pa.Super.Ct. 2003); Alliance Syndicate, Inc. v. Parsec, Inc., 741 N.E.2d 1039 (Ill.Ct.App. 2000); Alex Robertson Co. v. Imperial Casualty & Indemnity Co., 8 Cal.App.4th 338 (Cal.Ct.App. 1992).[6] Accordingly, I find that TIG’s duly to defend and indemnify under the policy issued to Erie extends only to named and additional insureds.
This does not foreclose the possibility that Ray-theon may recover on the policy as a third-party beneficiary. Where performance of a promise will benefit a person other than the promisee, that person is a beneficiary. Flattery v. Gregory, 397 Mass. 143, 148 (1986). To recover as a third-party beneficiary, a plaintiff must show that he is an “intended beneficiary.” Id. A party is an intended beneficiary if “recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.” Id. at 148-49.
Clearly, Erie was the primary beneficiary of the TIG Policy. Although the TIG Policy envisioned the existence of an “insured contract,” Raytheon does not allege that TIG and Erie intended to benefit those parties who enter into insured contracts with Erie and I discern nothing in the second amended complaint from which such an intent could be reasonably inferred. Cf. Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982) (allowing plaintiff to recover as third-party beneficiary to contract to obtain insurance where plaintiff alleged that parties executed contract “for the benefit” of her decedent). Raytheon also cites Flattery, 397 Mass. 143, where the Supreme Judicial Court held that an injured party that obtains a judgment against an insured may recover from the insurer as a third-party beneficiary. Id. at 151. Raytheon, however, has not obtained a judgment against Erie; its reliance on Flattery is misplaced. See also Tremco, Inc., 832 A.2d 1120 (granting summary judgment to defendant insurer where plaintiff entered into an “insured contract” with defendant’s insured because plaintiff failed to establish that it was an intended beneficiary of the policy).
It is also noteworthy that the TIG Policy provides that TIG “will pay those sums that [Erie] becomes legally obligated to pay as damages . . .” and TIG assumed the duty to defend any suit seeking damages to which the policy applies. Taking Raytheon’s allegations as true, Erie, Hathaway’s employer, is not legally obligated to pay any damages as a result of Hathaway’s fall. With regard to the duty to defend, Hathaway did not seek to recover from Erie. Indeed, the only suit seeking damages that Erie would be legally obligated to pay is the present action. Even assuming Raytheon were an intended beneficiary, therefore, any claim seeking to recover on the TIG Policy would fail.
Given the above discussion, Raytheon’s second amended complaint fails to state a claim against TIG for contractual indemnity. Its action, if any, lies against Erie.[7]

ORDER

For the foregoing reasons, TIG’s motion to dismiss counts II, III, and IV of Raytheon’s second amended complaint is ALLOWED. General Star’s motion to dismiss counts V, VI, and VII of Raytheon’s second amended complaint is ALLOWED.

 Count IV is not numbered in the second amended complaint.

 A significant portion of the TIG Policy, the 1188 Form, was not attached to the second amended complaint. However, Raytheon has attached this form to its opposition to TIG’s motion to dismiss and the court will consider its substance. Since Raytheon’s claim is dependent on the TIG Policy, this does not transform TIG and General Star’s motions to dismiss *123 into motions for summary judgment. See Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

 Raytheon notes that this definition may have been superseded by a subsequent lead-abatement endorsement. However, the respective definitions of “insured contract” in each document are not materially different.

 Since the General Star policy provides coverage to the extent it is available under the TIG Policy and Raytheon’s claims against General Star are identical to its claims against TIG, a separate analysis of General Star’s motion to dismiss is not necessary.

 Raytheon makes much of the fact that the insurance companies in Jefferson and Alex Robertson Co. agreed to defend any suit seeking damages “against the insured” whereas, here, TIG agreed to defend “any suit” seeking damages that the insured becomes legally obligated to pay. This distinction, however, is not material. An insurance policy constitutes a contract between the insurer and the insured. Roe v. Federal Ins. Co., 412 Mass. 43, 54 n.9 (1992). Even if the TIG Policy can be fairly construed to obligate TIG to defend Raytheon, the fact remains that Raytheon was not a parly to the underlying contract of insurance and absent third-party beneficiary status, which is discussed below, cannot recover on it.

 For the same reasons, Raytheon’s claim seeking a declaration that TIG owes it coverage with respect to the Hathaway action and that TIG has violated M.G.L.c. 93A/176D must be allowed. General Star’s motion to dismiss must also be allowed as to Raytheon’s three identical claims against it and Erie’s motion to stay is moot.