928 F.2d 199
 David YATES, d/b/a Excel Technology, Inc., Plaintiff,
William E. Wilson and Lillian K. Wilson, Intervening Plaintiffs,
Southland Optical Company (90-5305) and Robert Cook, d/b/a
Graphic Productions (90-5304), Intervening
Plaintiffs-Appellants,
v.
TRANSAMERICA INSURANCE COMPANY, INC., Defendant-Appellee.
 Nos. 90-5304, 90-5305.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 3, 1990.
Decided March 15, 1991.
Rehearing Denied April 29, 1991.
 
 1
 Leslie Rosenbaum, Rosenbaum & Rosenbaum, Lexington, Ky., for Southland Optical Co.
 
 
 2
 E. Douglas Stephan (argued), Geralds, Moloney & Jones, Lexington, Ky., for Robert Cook dba Graphic Productions.
 
 
 3
 Thomas M. Cooper, John McNeill (argued), Landrum & Shouse, Lexington, Ky., for Transamerica Ins. Co., Inc.
 
 
 4
 Before RYAN and NORRIS, Circuit Judges; and JOINER, Senior District Judge.*
 
 
 5
 JOINER, Senior District Judge.
 
 
 6
 This action was filed October 1, 1987, seeking a declaratory judgment that Transamerica Insurance Company, Inc. (TIC), was liable under a casualty insurance contract numbered 18867788, effective March 3, 1983, for judgments against plaintiff David Yates, d/b/a Excel Technology, Inc. (Excel), arising out of a fire caused by Excel's alleged negligent installation of an air conditioner. William E. Wilson and Lillian K. Wilson (hereinafter collectively referred to as Wilson), judgment creditors of Yates, intervened on January 14, 1988. On July 22, 1988, TIC moved for summary judgment against Yates and Wilson. Cross-motions for summary judgment against TIC were filed by Yates and Wilson on August 15, 1988.
 
 
 7
 Southland Optical Company (SOC) and Robert Cook, d/b/a Graphic Productions, also judgment creditors of Yates, were granted leave to intervene on March 9 and April 18, 1989, respectively. Their claims were made under the same policy referenced in the complaints of Yates and Wilson. On December 7, 1989, the district court ruled on the cross-motions for summary judgment filed by TIC, Yates, and Wilson. The district court granted summary judgment for TIC, denied summary judgment for Yates and Wilson, and dismissed the case. Neither Yates nor Wilson have appealed the decision of the district court.
 
 
 8
 On December 15, 1989, Cook and SOC filed a motion to alter or amend the dismissal, arguing that the district court's ruling on the summary judgment motions between TIC, Yates, and Wilson should not have resulted in dismissal of their claims, and, in the alternative, that the district court's analysis of the summary judgment motions was in error. At the time of this ruling, ongoing discovery had revealed the existence of a subsequent policy numbered 19172448, discussed in more detail below. The district court denied the Cook/SOC motion on January 26, 1990, and Cook and SOC brought the present appeal.
 
 I.
 
 9
 The facts relevant to the present dispute are as follows. Yates purchased Excel early in the spring of 1984. Excel was then insured under a one-year casualty insurance policy numbered 18867788 issued by TIC, with an expiration date of March 4, 1984. On March 8, 1984, Yates contacted David Deaton, the agent with whom Excel's prior owner had dealt, to inform him that he wished to renew the policy. Deaton's agency agreement with TIC gave him authority to "bind coverage"--enter into insurance contracts--on TIC's behalf. On March 12, 1984, Deaton completed the appropriate documents to inform TIC that the policy had been renewed.
 
 
 10
 TIC issued and mailed a written one-year policy numbered 19172448 to Deaton effective March 4, 1984. By letter dated April 18, 1984, Deaton informed Yates that "the renewal policy has been effective since 3-3-84," and that Deaton needed "the downpayment of $126.78 plus the first payment due 4-18-84 of $68.02." On April 25, 1984, apparently because Yates had not yet responded to the April 18 letter, Deaton sent a copy of the April 18 letter to Yates with an added marginal notation, "I need for you stop [sic] by and see me before the first of May. It is necessary I return the policy to the company by the first if not paid for."
 
 
 11
 Yates called Deaton's office on April 30, 1984, and left a message for Deaton, inquiring about the increase in the 1984-85 policy premium ($633.90) over the 1983-84 policy premium ($573.06). Yates called again on May 2, 1984, and informed Deaton that he would be mailing a check the next day. By memo of the same date, Deaton wrote Yates:
 
 
 12
 I have tried to call you several times, no luck. Have you arranged for replacement insurance? I can't hold the policy any longer. The company is after me for the renewal premium, which was due March 3, 1984. Give me a call or stop by and see me. I will hold the policy until Friday, May 4, 1984. I just can't hold the policy any longer for you. The policy will terminate back to March 3, 1984, for non payment of the renewal premium.
 
 
 13
 It is not clear from the record whether this memo was prepared before or after Deaton was informed that Yates would be mailing a check on May 3, 1984.
 
 
 14
 On May 7, 1984, Deaton sent Yates a memo stating that the premium had not been received, and, in pertinent part, that "payment is too long past due. It is necessary to mail the policy back to the company for cancellation effective March 3, 1984." On May 8, 1984, Deaton wrote TIC asking for a "flat" cancellation--as if coverage had never existed--which had the effect of relieving the agent from his obligation to pay TIC for the period of coverage. The agency agreement between TIC and Deaton provided that "[m]onthly balances due to the Company or the Agent shall be paid not later than 45 days after the close of the month for which said statement was prepared by the Company or reported by the Agent, whether such premiums are collected by the Agent or not." Deaton would therefore have become liable to TIC for the amount of the premium on approximately May 15, 1984.
 
 
 15
 Deaton received Yates' check for the downpayment and first installment payment on May 9, 1984. Although the check was dated May 4, 1984, the envelope which contained it was postmarked May 8, 1984. Deaton returned the check to Yates with a memo stating, in part:
 
 
 16
 I received your initial payment to [sic] late to renew your business insurance policy. The renewal date was March 3, 1984. I have 45 days to collect and remit the payment to the insurance company. As a favor to you I did hold the policy until May 8, 1984. I mailed the policy back to the company on May 8, 1984, with a request to cancel the policy effective March 3, 1984.
 
 
 17
 The fire which gave rise to the judgment against Yates occurred on June 21, 1984. Yates subsequently filed a claim with TIC, which was denied.
 
 
 18
 The manner in which cancellation of a policy could be effected was set forth in a cancellation provision incorporated from the 1983-84 policy by the 1984-85 policy.[1] The cancellation provision stated that "[t]his policy may be cancelled by the Company by mailing to the named insured ... written notice stating when not less than ten days thereafter such cancellation shall be effective."
 
 
 19
 The district court's conclusion that the policy numbered 18867788 did not provide coverage for the fire which occurred June 21, 1984, is not challenged here. The district court found for TIC under the policy numbered 19172448 on grounds that no contract for insurance ever arose, either for lack of consideration or for "non-acceptance" of TIC's "offer" by failure to pay the premium. The district court further found that TIC was under no duty to give notice to Yates under Ky.Rev.Stat.Ann. section 304.20-320(3)(b) (Baldwin 1987), which provides that notice of non-renewal is not required. The intervening plaintiffs challenge the district court's conclusions. TIC asserts that the intervening plaintiffs may not raise policy No. 19172448 here because their complaints mentioned only policy No. 18867788. Because the district court erred in its ruling regarding "lack of consideration" and "non-acceptance" of the policy of insurance numbered 19172448, it is necessary to reverse. Because the district court ruled sua sponte that the claims of the intervenor-plaintiffs should be dismissed while discovery was ongoing, without an opportunity to request amendment of the pleadings to conform to the facts disclosed by discovery, it is necessary to remand. The reasons for reversal and remand follow.
 
 II.
 
 20
 We agree with the intervening plaintiffs that the district court erred in its discussion of the policy numbered 19172448. Ambiguities in contracts for insurance are construed in favor of the insured. State Farm Mut. Auto Ins. Co. v. Rains, 715 S.W.2d 232, 236 (Ky.1986). The question of the form of acceptance sought under the insurance contract at issue is such an ambiguity. The district court held that since Yates did not pay the premium before surrender of the renewal policy, there was no contract of insurance. The court implies that this was a failure of consideration. This is error. The company and Deaton had a contract authorizing Deaton to bind the company on Deaton's credit for 45 days. That agreement and Yates' liability for the premium was ample consideration.
 
 
 21
 The facts are without dispute. Yates wanted insurance and applied to the company's agent for a policy like the earlier policy. Deaton bound TIC to issue a policy of insurance according to the terms of the earlier policy. The company took Deaton's credit in accordance with its contract with Deaton, in payment of the premium for a period of 45 days. A contract of insurance arose as of the time Deaton indicated, March 3, 1984, and had the loss occurred immediately thereafter there could be no question about liability. In sum, it is apparent to this court that the parties entered into a contract of sufficient definiteness to be enforced. Hartford Accident & Indem. Co. v. Middlesboro-LaFollette Bus Line, Inc., 357 S.W.2d 671, 672-73 (Ky.1962); Standard Fire Ins. Co. v. Robey, 257 Ky. 204, 77 S.W.2d 785 (1934). The terms of the policy which issued are those of the binder, and those by which the company is bound and with which it must comply. Ky.Rev.Stat.Ann. Sec. 304.14-220 (Baldwin 1987); Preferred Risk Fire Ins. Co. v. Neet, 262 Ky. 257, 90 S.W.2d 39 (1935). The district court's reliance upon the provisions of Ky.Rev.Stat.Ann. section 304.20-320(3)(b) (Baldwin 1987), dealing with notice, was also error. The section applies only to contracts "delivered, issued for delivery, or renewed after July 15, 1986," which is not the case here. Ky.Rev.Stat.Ann. Sec. 304.20-300(1) (Baldwin 1987).
 
 III.
 
 22
 The trial court dismissed the intervening plaintiffs' complaints during ongoing discovery and without notice to SOC and Cook that the court was considering dismissing their claims. No motion had been filed against SOC and Cook. It will be necessary to remand the case so that the district court can consider the claims of the parties in light of discovery and after an opportunity to be heard.
 
 
 23
 For the same reason, TIC's arguments to this court directed to the theories of Cook's and SOC's complaints are not properly before us. The district court's judgment was reached without the benefit of any memoranda from SOC or Cook, and there is no reason to suppose that the district court considered the theories of their complaints at all. Moreover, TIC's suggestion that SOC and Cook could not deviate from the theories of their complaints (if and when summary judgment is sought against them), is based upon Kentucky precedents. Although this is a diversity action, these matters are not governed by state law. Hanna v. Plumer, 380 U.S. 460, 471, 85 S.Ct. 1136, 1143-44, 14 L.Ed.2d 8 (1965); Marsh v. Austin-Fort Worth Coca-Cola Bottling Co., 744 F.2d 1077, 1079 n. 4 (5th Cir.1984); C. Wright, A. Miller & M. Kane, Federal Practice & Procedure, Sec. 2721 at 43 (1983). On remand, the district court may exercise its authority to allow amendments indicated by evidentiary developments. Further, the intervening plaintiffs assert that the particular deficiency in their complaints to which TIC objects, omission of policy numbered 19172448, occurred because the intervening plaintiffs were not aware that the 1983-84 and 1984-85 policies did not have the same policy number. This is a credible assertion in view of the consistent references by Deaton and Yates to the 1984-85 policy, in contemporaneous documents, as a "renewal."
 
 
 24
 On remand, several disputed issues remain for resolution. The cancellation provision of the policy required "notice stating when not less than ten days thereafter such cancellation shall be effective." The outstanding questions as to whether Deaton's correspondence with Yates or other events effected a cancellation include, inter alia, whether Deaton's notes effectively gave notice of cancellation, whether the successive extensions functioned as waivers of their predecessors or estop the insurer to assert cancellation, and the effect of the conditional nature of the demands (in view of the payment of the premium). The court notes that an insurer's compliance with a cancellation provision is to be strictly construed. Goodin v. General Accident Fire & Life Assurance Corp., 450 S.W.2d 252 (Ky.1970); Carden v. Liberty Mut. Ins. Co., 278 Ky. 117, 128 S.W.2d 169 (1939).
 
 
 25
 REVERSED and REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Although the 1984-85 policy has a different policy number than that of its predecessor, it is apparent that it is not an integrated document. The policy begins by reciting that it is "replacing" the 1983-84 policy, and concludes by stating, "all other terms and conditions remaining unchanged." There is nothing resembling a redrafted cancellation provision in the 1984-85 policy which would supersede the cancellation provision of the 1983-84 policy. The 1984-85 policy viewed in isolation is also silent as to a number of necessary subjects