MYODA COMPUTER CENTER, INC., Plaintiff-Appellant, v. AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Appellee.

First District (6th Division)    No. 1—07—1915

Opinion filed March 31, 2009.

Victor F. Ciardelli, of Ciardelli & Cummings, and Kenneth James Hogan, of Kenneth James Hogan, P.C., both of Chicago, for appellant.

Joshua G. Vincent and Carol Proctor, both of Hinshaw & Culbertson, LLP, of Chicago, for appellee.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Myoda Computer Center, Inc. (Myoda), filed a declara-

tory judgment action against defendant, American Family Insurance Company (American Family), claiming that American Family was obligated to indemnify Myoda and pay Myoda's defense costs in settling a lawsuit against it. American Family then filed a counterclaim for declaratory judgment seeking a declaration that it owed Myoda no duty to indemnify either Myoda's settlement of Microsoft's lawsuit against it or Myoda's postsettlement defense costs. Following cross-motions for summary judgment based upon a set of stipulated facts, the trial court granted American Family's motion and denied Myoda's. On appeal, Myoda claims that: (1) American Family was not entitled to summary judgment solely based upon the fact that Myoda failed to obtain American Family's consent prior to settling the underlying lawsuit; and (2) assuming *arguendo* that Myoda breached the insurance contract with American Family, the breach was not material, and therefore, American Family was not relieved of its duty to indemnify absent evidence that the settlement was unreasonable, collusive, or interfered with American Family's ability to contest indemnity.

## BACKGROUND

The following stipulated facts formed the basis of the parties' cross-motions for summary judgment:

American Family issued an insurance policy in favor of Myoda, the named insured, effective January 5, 2002, to January 5, 2003. This policy was subsequently renewed effective January 5, 2003, to January 5, 2004. Section II of the policy included coverage for "advertising injury," which was defined as "injury arising out of one or more of the following offenses: *** infringement of copyright, title, or slogan." The policy also included the following provision:

> "If there is an occurrence or offense that may be covered under Section II which may lead to a claim or suit being made against you ***:
>
> * * *
>
> h. Do not make any payment or accept any financial obligations without our authorization. If you do, we may not reimburse you, even if the cost is otherwise covered by this policy."

On June 19, 2003, Microsoft Corporation (Microsoft) filed a cause of action against Myoda for copyright and trademark infringement, alleging that Myoda sold counterfeit Microsoft software. American Family agreed to pay for Myoda's defense costs and allowed Myoda to choose its own legal counsel, but reserved its right to later deny coverage.

On October 23, 2003, Myoda informed American Family that it was attempting to settle Microsoft's lawsuit against it and asked for American Family's position with respect to contributing to a possible

settlement. American Family responded that, although it may have an interest in contributing toward the settlement, it was not in a position to authorize Myoda to settle the lawsuit, and requested information that would enable it to determine the value of the lawsuit and Myoda's potential liability.

On October 30, 2003, Myoda sent a letter to American Family indicating that Myoda had increased its offer to $50,000, and that Microsoft accepted it. Myoda's letter included Microsoft's complaint, Myoda's answer, Microsoft's and Myoda's answers to the other side's written interrogatories, and the section of the United States Code indicating the amount of damages that can be recovered in an infringement case. American Family responded that Myoda's settlement with Microsoft without American Family's consent was a breach of the insurance contract and that American Family would not reimburse Myoda for the settlement. Two weeks after American Family's response, Myoda executed the settlement agreement with Microsoft.

Based upon the above stipulated facts, Myoda and American Family each filed cross-motions for summary judgment. On April 17, 2007, the trial court held a hearing on the motions, and on May 9, 2007, the court granted American Family's motion and denied Myoda's motion. This timely appeal follows.

## ANALYSIS

Myoda first contends that American Family was not entitled to summary judgment solely based upon the fact that Myoda failed to obtain American Family's consent prior to settling the underlying lawsuit. Specifically, Myoda claims that American Family relinquished control of Myoda's defense by reserving its right to contest indemnity and by providing Myoda independent defense counsel. In response, American Family contends that Illinois law establishes that, absent an insurer's breach of its duty to defend, an insured must obtain the consent of the insurer prior to settlement. American Family further contends that the cases relied upon by Myoda are either factually distinguishable or from foreign jurisdictions and based upon a legal premise that is inconsistent with Illinois law.

Summary judgment is proper where, after viewing the pleadings, depositions, admissions, and affidavits on file in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002); see also *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003). A genuine issue of material fact that would preclude summary judgment occurs either where a material fact is disputed or where reasonable persons might draw differing inferences from the

undisputed material facts. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). We review *de novo* the trial court's entry of summary judgment (see *Hall*, 208 Ill. 2d at 328), the construction of an insurance policy (see *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001)), and the legal effect of a stipulation (see *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 390 (1994)).

In construing the language of an insurance policy, our primary objective is to ascertain and give effect to the intent of the parties to the contract. See *Travelers Insurance Co.*, 197 Ill. 2d at 292. To determine the parties' intent, we must construe the policy as a whole and consider the type of insurance contracted for, as well as the nature of the risks covered and the overall purpose of the contract. See *Travelers Insurance Co.*, 197 Ill. 2d at 292. If the words of a policy are clear and unambiguous, we must give them their plain, ordinary, and popular meaning; if not, we must construe the ambiguities strictly against the drafter of the policy (here, American Family) and in favor of the insured. See *Travelers Insurance Co.*, 197 Ill. 2d at 292-93. It is well established that we may not " 'strain to find ambiguity in an insurance policy where none exists.' " *Travelers Insurance Co.*, 197 Ill. 2d at 293, quoting *McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 497 (1999).

■ Regarding an insured's indemnification for the settlement of a lawsuit against it, the general rule in Illinois is that, provided the insurer has not breached its duty to defend, an insured must obtain the consent of the insurer before settling with an injured plaintiff. See *Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141, 149 (2003). An insurer, however, does not have "unfettered discretion to withhold consent," where seeking such consent would have been futile. See *Central Illinois Light Co. v. Home Insurance Co.*, 342 Ill. App. 3d 940, 952 (2003). In addition, even if the settlement amount is within the policy limits, that fact does not *per se* establish that the settlement is reasonable. See *Guillen*, 203 Ill. 2d at 164-65. A voluntary payments provision, such as the one at issue in this case, provides that an insurer will not be held responsible for its insured's voluntary payments incurred before tendering the defense of a lawsuit. See *Westchester Fire Insurance Co. v. G. Heileman Brewing Co.*, 321 Ill. App. 3d 622, 637 (2001), citing *Faust v. The Travelers*, 55 F.3d 471 (9th Cir. 1995) (construing California law). The purpose of requiring an insurer's prior consent before settling with an injured plaintiff is to prevent collusion between the insured and the injured party. See *Westchester Fire Insurance Co.*, 321 Ill. App. 3d at 637. An insurer, however, must show prejudice in order to avoid responsibility because of a breach of this clause. See *Westchester Fire Insurance Co.*, 321 Ill. App. 3d at 637.

As noted above, the cross-motions for summary judgment were based upon a set of stipulated facts. As a general rule, Illinois courts look favorably upon stipulations that promote the disposition of cases and simplification of issues. See *Fitzpatrick*, 267 Ill. App. 3d at 390. Therefore, stipulations by parties or their attorneys will be enforced unless it is established that the stipulation is unreasonable, the result of fraud, or contrary to public policy. See *Fitzpatrick*, 267 Ill. App. 3d at 390. Moreover, an attorney has the authority to make judicial admissions via stipulation on behalf of the client, and even in the absence of express authorization, a client will be bound by the client's attorney "where the client fails to seasonably apply for relief from the stipulation." *Fitzpatrick*, 267 Ill. App. 3d at 391. Finally, "[f]ailure to oppose a summary judgment motion supported by affidavits or stipulations by filing counter-affidavits in response is fatal." *Fitzpatrick*, 267 Ill. App. 3d at 391.

Initially, we note that neither party claims that the set of stipulated facts was unreasonable, procured by fraud, or in violation of public policy. In addition, there is nothing in the record to indicate that Myoda applied for relief from the stipulation or that it opposed American Family's motion for summary judgment by filing a counter-affidavit in response. As such, there is no basis to set aside the stipulation.

Each party relies primarily upon one Illinois case in supporting its position. Myoda relies upon *Commonwealth Edison Co. v. National Union Fire Insurance Co.*, 323 Ill. App. 3d 970 (2001), which American Family dismisses as factually distinguishable from the case at bar. American Family argues that *Alliance Syndicate, Inc. v. Parsec, Inc.*, 318 Ill. App. 3d 590 (2000), is "virtually the same" as the case at bar, which Myoda claims is factually distinguishable from the instant case. We agree with Myoda.

In *Alliance*, the defendant paid $2.5 million to an injured individual in settlement of a lawsuit filed against the defendant and CSX Corporation, a third party that the defendant agreed to indemnify. *Alliance*, 318 Ill. App. 3d at 593. While the underlying suit was pending, the plaintiff insurer brought a declaratory judgment action against the defendant (its insured) seeking a declaration as to its obligation to defend or indemnify the defendant in the underlying action. *Alliance*, 318 Ill. App. 3d at 593. The trial court granted summary judgment in favor of the insurer, and the defendant appealed. *Alliance*, 318 Ill. App. 3d at 593. On appeal, the insurer claimed that it was not obligated to cover the amount of the settlement because, *inter alia*, the defendant "settled the suit without [the insurer's] involvement." *Alliance*, 318 Ill. App. 3d at 600. This court agreed and further found

that "where [the insurer] was otherwise in compliance with the terms of its policy and [the defendant], against the wishes of [the insurer], *accepted the tender of CSX* and then voluntarily settled the underlying suit, [the defendant] violated the provision in the [insurer's] policy stating that ' "[n]o insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense *** without our consent." ' " (Emphasis added.) *Alliance*, 318 Ill. App. 3d at 601. The key factual difference is that, in *Alliance*, the insured accepted the tender of a third party that was not an additional named insured, which the court specifically cited in holding that the insurer was not liable to cover the insured's settlement. See *Alliance*, 318 Ill. App. 3d at 601. Here, Myoda did not accept the tender of an unnamed third party. American Family's reliance upon *Alliance* in support of its claim that, absent a breach by the insurer, an insured party may not settle a case without its consent is therefore misplaced.

By contrast, in *Edison*, the decedent died after she came into contact with a downed power line. *Edison*, 323 Ill. App. 3d at 972. Decedent's special administrator filed a lawsuit against Commonwealth Edison (ComEd) and Asplundh Tree Expert Company (Asplundh), alleging, *inter alia*, that Asplundh negligently trimmed trees surrounding ComEd's power lines. *Edison*, 323 Ill. App. 3d at 972-73. The parties stipulated that this lawsuit was settled after ComEd paid $1.5 million, and the defendant, National Union Fire Insurance (National), paid $1.5 million on behalf of Asplundh. *Edison*, 323 Ill. App. 3d at 972-73. In addition, the parties stipulated that National agreed that the lawsuit should be settled to avoid a "larger jury verdict against [ComEd] and Asplundh *** and that $3 million was a reasonable settlement amount on behalf of [ComEd] and Asplundh." *Edison*, 323 Ill. App. 3d at 975. On appeal, National argued, *inter alia*, that it had no duty to indemnify ComEd because ComEd failed to obtain its consent prior to settling the lawsuit. *Edison*, 323 Ill. App. 3d at 983. The court, however, rejected National's contention and quoted at length from a federal Third Circuit case, *Cay Divers, Inc. v. Raven*, 812 F.2d 866 (3d Cir. 1987). *Edison*, 323 Ill. App. 3d at 984-85. In particular, the *Edison* court quoted the following passage from *Cay Divers*:

> " 'We therefore hold that when a complaint, or a part of it, in an action against an insured is arguably within the scope of the insurance coverage, an insurer's discharge of its duty to defend by providing independent counsel, even though reserving the right to contest coverage, relieves it of control over the litigation, and a reasonable settlement effectuated by the insured does not bar an action for indemnification against the insurer.' " *Edison*, 323 Ill. App. 3d at 984-85, quoting *Cay Divers*, 812 F.2d at 869-70.

The court then held that, as in *Cay Divers*, National agreed to provide a defense for ComEd under a reservation of rights and relinquished control of that defense due to a potential conflict of interest. *Edison*, 323 Ill. App. 3d at 985. Noting that the settlement did not compromise National's ability to contest indemnification at a later date because of its reservation of rights, the court held that ComEd was not required to obtain National's consent prior to settlement. *Edison*, 323 Ill. App. 3d at 985.

■ Here, the stipulated, and therefore undisputed, facts are that Microsoft filed a lawsuit against Myoda, and Myoda hired outside counsel, who tendered the defense to American Family. American Family responded by agreeing to pay for Myoda's defense subject to a reservation of rights because American Family had a potential conflict of interest, namely, that American Family believed that the claim was not covered by the insurance policy. Myoda's independent legal counsel subsequently informed American Family that it was trying to settle the lawsuit and asked for its opinion regarding contributing to a possible settlement. American Family responded by requesting information on the underlying lawsuit, but noted that it might have an interest in contributing toward a possible settlement. Myoda then informed American Family that Microsoft accepted its offer of $50,000 to settle the case and provided American Family with documentation regarding the underlying suit. We find nothing in the record to indicate that American Family, despite its agreement to defend under a reservation of rights, is somehow precluded from challenging coverage at a later date, as the insurer in *Edison* would have been able to do. Furthermore, and also as in *Edison*, American Family surrendered the defense to Myoda's independent legal counsel and therefore no longer had control over the course of the litigation, and a reasonable settlement by the insured should not prevent an action for (in opposition to) indemnification. Finally, we note that the settlement of the underlying lawsuit took place *after* Myoda tendered the matter to American Family, which would appear not to implicate the voluntary payments clause. See *Westchester Fire Insurance Co.*, 321 Ill. App. 3d at 637, citing *Faust v. The Travelers*, 55 F.3d 471 (9th Cir. 1995) (construing California law).

Contrary to American Family's assertion, the issue at bar is not "whether [Myoda] can recover $50,000 from American Family for a settlement [Myoda] made without first obtaining American Family's consent." Rather, we are asked to review the propriety of the trial court's granting of summary judgment in favor of American Family, *i.e.*, whether American Family was entitled to judgment as a matter of law. Because it is clear that reasonable people may have differing

inferences on the undisputed facts in this case, we find that American Family was not entitled to judgment as a matter of law. See *Williams*, 228 Ill. 2d at 417.

Myoda's other contention on appeal is that, assuming *arguendo* that Myoda breached the voluntary payments clause, American Family must show prejudice to avoid indemnification. Because of our holding that Myoda did not breach the voluntary payments clause, however, we need not address this contention on appeal.

Accordingly, we reverse the judgment of the circuit court of Cook County and remand the matter for further proceedings.

Reversed and remanded.

JOSEPH GORDON and McBRIDE, JJ., concur.