In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2022

R.G. WEGMAN CONSTRUCTION COMPANY,

*Plaintiff-Appellant,*

*v.*

ADMIRAL INSURANCE COMPANY and BRIAN BUDRIK,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 6479—**James B. Zagel**, *Judge*.

ARGUED SEPTEMBER 13, 2010—DECIDED JANUARY 14, 2011

Before EASTERBROOK, *Chief Judge*, and POSNER and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant insurance company, Admiral, issued a liability insurance policy that provided a $1 million ceiling on coverage for a single occurrence (that is, an event that would trigger coverage). While the policy was in effect, Brian Budrik, a worker at a construction site managed by Wegman Con-

struction Company, was injured in a fall and sued Wegman (an "additional insured" on the policy, which had been issued to Budrik's employer), along with other potentially liable entities, for negligence. The case went to trial, Budrik prevailed, and a judgment for a little more than $2 million was entered against Wegman. Wegman then filed the present suit in an Illinois state court against Admiral, claiming that Wegman would not have been liable for damages in excess of the $1 million policy limit had Admiral discharged the implied contractual duty of good faith that insurance companies owe their insureds.

As we explained in *Twin City Fire Ins. Co. v. Country Mutual Ins. Co.*, 23 F.3d 1175, 1179 (1994), applying Illinois law, a correlative to the standard provision that authorizes a liability insurer to control the defense of a claim against the insured is "the duty not to gamble with the insured's money by forgoing reasonable opportunities to settle a claim on terms that will protect the insured against an excess judgment. Were it not for this duty, a duty fairly implied in the insurance contract, in a case in which a claim could be settled at or near the policy limit, yet there was a good although not certain chance that it could be beaten at trial, the insurance company would be sorely tempted to take the case to trial. For that would place it in a 'Heads I win, tails you lose,' position. Suppose the claim was for $2 million, the policy limit was $1 million, the plaintiff was willing to settle for this amount, but the defendant's insurer believed that if the case was tried the plaintiff would have a 50 percent chance of winning $2 million

and a 50 percent chance of losing. The insurer's incentive would be to refuse to settle, since if it lost the trial it would be no worse off than if it settled—in either case it would have to pay $1 million—but if it won it would have saved itself $1 million" (citations omitted). See also *Haddick ex rel. Griffith v. Valor Ins.*, 763 N.E.2d 299, 303-04 (Ill. 2001); *Founders Ins. Co. v. Shaikh*, 937 N.E.2d 1186, 1191-92 (Ill. App. 2010); *O'Neill v. Gallant Ins. Co.*, 769 N.E.2d 100, 109-10 (Ill. App. 2002).

Admiral removed the case to federal district court under the federal diversity jurisdiction and filed a motion to dismiss, which the district court granted, precipitating this appeal.

Before turning to the merits (which are governed by Illinois law), we take up a procedural hiccup relating to the existence of federal jurisdiction. After removal, Wegman was permitted to amend its complaint to add Budrik, the accident victim, as a defendant. Why Wegman did this is unclear, since it said in its motion to amend, and continues to insist, that it seeks no relief from Budrik, whom it describes as a "nominal" defendant. How could it seek relief against him? Budrik did not injure Wegman!

Budrik, like Wegman, is a citizen of Illinois, so if he's really a defendant the requirement of complete diversity of citizenship is not satisfied. But a party isn't permitted to destroy federal diversity jurisdiction by naming as a defendant someone against whom he does not seek relief. See *Walden v. Skinner*, 101 U.S. 577, 589 (1879). Otherwise Wegman could have forced the case to be

remanded to the state court by naming Rod Blagojevich, or any other Illinois citizen, as a "nominal" defendant. It would be different if Budrik were an indispensable party, which is to say a party in whose absence the suit could not proceed. E.g., *American National Bank & Trust Co. v. Bailey*, 750 F.2d 577, 582 (7th Cir. 1984); *Mattel, Inc. v. Bryant*, 446 F.3d 1011, 1013-14 (9th Cir. 2006); *Salt Lake Tribune Publishing Co. v. AT&T Corp.*, 320 F.3d 1081, 1095-97 (10th Cir. 2003). He is not.

It is true that Budrik, unlike Blagojevich, may have a practical interest in this suit because he is a judgment creditor of Wegman, having yet to be paid the judgment entered against Wegman, which is broke; probably he'll never be paid unless Wegman replenishes its coffers by winning this suit. That might be a basis for Budrik's intervening in this litigation, *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1110 (7th Cir. 1982); *Yates v. Transamerica Ins. Co.*, 928 F.2d 199, 200 (6th Cir. 1991); *Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989), but if so it would be intervention on the plaintiff side of the litigation, and so would not destroy diversity. Anyway Budrik has not sought to intervene, and has made no appearance either in the district court or in this court.

As there was no basis for adding Budrik as a party, we dismiss him from the case and move on to the merits.

The complaint alleges the following facts, which we take as true for purposes of reviewing the district judge's grant of Admiral's motion to dismiss. Wegman had been sued by Budrik in 2003, two years after his

injury. Admiral exercised the option granted it by the insurance policy to defend the Budrik suit at its expense; thus, the complaint explains, Admiral "accepted Wegman's defense" and "controlled" the defense. The complaint goes on to allege that "no later than May 2005 (at the time [that Budrik's] deposition [in his tort case] was conducted), [Admiral] knew" that Budrik had sustained serious injuries that had required a lumbar fusion, had experienced "substantial pain and suffering for an extended period of time," had "sustained permanent physical disabilities," had been "unable to perform construction work" since the accident, had "sustained substantial loss of income and was likely to sustain substantial loss of income in the future," and "had incurred and would incur substantial medical expenses." Admiral also knew, "as early as May 2005 and no later than April 2007," that Budrik was demanding "almost $6,000,000" to settle the suit; as a result Admiral "knew that the Budrik Lawsuit presented a realistic possibility of a potential loss to Wegman . . . in excess of the Admiral Policy limits." Admiral failed to warn Wegman of this possibility. Had it done so, Wegman would have sought and obtained indemnity from its excess insurer—the policy limit in its excess policy was $10 million. A prudent insured notifies its excess insurer of any nontrivial claim.

Wegman, the complaint continues, "did not realize that the Lawsuit presented a realistic possibility of a loss in excess of the Admiral Policy limits until [September 2007,] a few days before the trial of the Budrik Lawsuit when a Wegman executive was casually discussing the

Budrik Lawsuit with a relative who happened to be an attorney." Wegman promptly notified its excess insurer, but the excess insurer refused coverage on the ground that it had not received timely notice. Wegman also hired a new lawyer to handle its defense against Budrik's suit—and has since sued that lawyer. But the present suit is only against Admiral, for failing to notify Wegman of the possibility of an excess judgment in time for Wegman to have invoked its excess coverage.

Neither the briefs nor the complaint, nor for that matter the insurance policy, judicial opinions, or treatises on insurance law, tell us much about how situations of the sort presented by this case are handled by insurance companies. We learned a little more at the oral argument and from our own research. See Michael J. Haverson, "Litigating the Insurance Coverage Case—A Carrier's Expectations of Its Counsel," *For the Defense*, May 2009, pp. 49, 53, www.haversonconsulting.com/my_web_site/ Presentations_Articles_files/DRI%20Carrier%20Exp.pdf (visited Dec. 23, 2010); James M. Fischer, "Insurer or Policyholder Control of the Defense and the Duty To Fund Settlements," 2 *Nevada L.J.* 1 (2002); Ellen S. Pryor & Charles Silver, "Defense Lawyers' Professional Responsibilities: Part I—Excess Exposure Cases," 78 *Tex. L. Rev.* 599, 645-55, 657 (2000); Douglas R. Richmond, "Walking the Tightrope: The Tripartite Relationship Between Insurer, Insured, and Insurance Defense Counsel," 73 *Neb. L. Rev.* 265 (1994); Karon O. Bowdre, "Conflicts of Interest Between Insurer and Insured: Ethical Traps for the Unsuspecting Defense Counsel," 17 *Am. J. Trial Advocacy* 101, 139-41 (1993). The situation in question is

the emergence of a potential conflict of interest between insurer and insured in the midst of a suit in which the insured is represented by a lawyer procured and paid for by the insurer.

At the outset—and in fact in this case at the outset—usually neither insurance company nor insured has reason to believe that the insured's liability to the victim of the tort for which the insured is being sued will result in a judgment (if the case goes to trial) in excess of the policy limit. That means that as a practical matter the insured has no interest in the litigation; he is not paying for his attorney and will lose nothing if he loses the suit, if we set to one side possible concerns with loss of reputation or with the insurer's upping his premiums for future coverage.

If the insurance policy entitles the insurer to "defend the insured," the insurer will either designate an in-house lawyer to represent the insured or, as in this case, hire a lawyer from a defense firm to which the insurer refers such matters. Because only the insurer, on the defense side of the case, has (or at this stage is believed to have) a financial stake in the case, the lawyer will report to the insurer on the progress of the litigation, as well as (or possibly instead of) to his client. An insurance adjuster employed by the insurance company will be monitoring the lawyer carefully, both because the company is paying his fee (or salary, if he's in-house) and, more important, because it will be liable for any settlement or judgment up to the policy limit. Thus "the insurer's duty to defend includes the right to assume

control of the litigation . . . to allow insurers to protect their financial interest in the outcome of litigation and to minimize unwarranted liability claims. Giving the insurer exclusive control over litigation against the insured safeguards the orderly and proper disbursement of large sums of money involved in the insurance business." *Nandorf, Inc. v. CNA Ins. Cos.*, 479 N.E.2d 988, 991 (Ill. App. 1985); see also *Stoneridge Development Co. v. Essex Ins. Co.*, 888 N.E.2d 633, 644 (Ill. App. 2008). By virtue of that control, however, the insurer's duty to the insured includes not only "the hiring of competent counsel" but also "keeping abreast of progress and status of litigation in order that it may act intelligently and in good faith on settlement offers." 4 *Couch on Insurance* § 202:17 (3d ed. 2007).

So it is likely that in May 2005, when Budrik was deposed, Admiral learned forthwith from the lawyer whom it had hired to represent Wegman of the extent of the injuries to which Budrik testified in his deposition, and thus knew that if the case went to trial, or was settled, the judgment or the settlement might well exceed $1 million. This likelihood created a conflict of interest by throwing the interests of Admiral and Wegman out of alignment. Suppose Admiral thought that if Budrik's case went to trial there was a 90 percent chance of a judgment no greater than $500,000 and a 10 percent chance of a judgment of $2 million (to simplify, we ignore other possibilities). Then the maximum expected cost to Admiral of trial would have been $550,000 (.90 x $500,000 + .10 x $1,000,000, the policy limit), and so (ignoring litigation expenses) Admiral would not want

to settle for any higher figure. But Wegman would be facing an expected cost of $100,000 (.10 x ($2,000,000 – $1,000,000)), and no benefit, from a trial.

These numbers are hypothetical, but at the oral argument Admiral's lawyer confessed that his client had been gambling on minimizing its liability at the expense, if necessary, of Wegman. Under Illinois law Wegman would, if found to be no more than 25 percent responsible for Budrik's injury, be liable only for 25 percent of Budrik's damages, 735 ILCS 5/2-1117, and, since there were other defendants, the lawyer thought he had a good shot at such a result. But in the event, the jury found Wegman 27 percent responsible, which under Illinois law made it jointly liable for the entire damages. Thus, Admiral had hoped to get away with having to pay only half the policy limit (.25 x $2 million = .50 x $1 million), but at the risk that a judgment would be imposed on Wegman that far exceeded that limit.

Such gambling with an insured's money is a breach of fiduciary duty. *Cramer v. Ins. Exchange Agency*, 675 N.E.2d 897, 903 (Ill. 1996); *LaRotunda v. Royal Globe Ins. Co.*, 408 N.E.2d 928, 935-36 (Ill. App. 1980); *Transport Ins. Co. v. Post Express Co.*, 138 F.3d 1189, 1192-93 (7th Cir. 1998) (Illinois law); *Twin City Fire Ins. Co. v. Country Mutual Ins. Co.*, *supra*, 23 F.3d at 1179 (same); *Magnum Foods, Inc. v. Continental Casualty Co.*, 36 F.3d 1491, 1504 (10th Cir. 1994). At oral argument Admiral's lawyer came close to denying the existence of the duty by saying that "simply by reason of the nature of the demand [the reference is to Budrik's demand for a $6 million settlement],

an insurance company cannot be charged with knowledge of probability of an excess verdict, because routinely plaintiffs make excess demands."

When a potential conflict of interest between insured and insurer arises, the insurance company's duty of good faith requires it to notify the insured. The usual conflict of interest involves the insurance company's denying coverage, as in such cases as *Royal Ins. Co. v. Process Design Associates., Inc.*, 582 N.E.2d 1234, 1239 (Ill. App. 1991), but the principle is the same when the conflict arises from the relation of the policy limit to the insured's potential liability, as in *Mobil Oil Corp. v. Maryland Casualty Co.*, 681 N.E.2d 552, 561-62 (Ill. App. 1997), and *Hamilton v. State Farm Mutual Auto. Ins. Co.*, 511 P.2d 1020, 1022-24 (Wash App. 1973), affirmed, 523 P.2d 193 (Wash. 1974). Once notified by the insurer of the conflict, the insured has the option of hiring a new lawyer, one whose loyalty will be exclusively to him. E.g., *Maryland Casualty Co. v. Peppers*, 355 N.E.2d 24, 30-31 (Ill. 1976); *Illinois Masonic Medical Center v. Turegum Ins. Co.*, 522 N.E.2d 611, 613 (Ill. App. 1988). If he exercises that option, the insurance company will be obligated to reimburse the reasonable expense of the new lawyer. E.g., *id.*; *Insurance Co. of State of Pennsylvania v. Protective Ins. Co.*, 592 N.E.2d 117, 123 (Ill. App. 1992). Had Wegman hired a new lawyer upon being promptly informed of the conflict back in May 2005, that lawyer would have tried to negotiate a settlement with Budrik that would not exceed the policy limit; and if the settlement was reasonable given the risk of an excess judgment, Admiral would be

obligated to pay. *Myoda Computer Center, Inc. v. American Family Mutual Ins. Co.*, 909 N.E.2d 214, 220-21 (Ill. App. 2009); *Commonwealth Edison Co. v. National Union Fire Ins. Co. of Pittsburgh,* 752 N.E.2d 555, 566-67 (Ill. App. 2001). And since Wegman had excess insurance, notification to it of the risk of an excess judgment would have enabled it to notify its excess insurer promptly, in order to preserve the protection that the excess coverage provided. *General Casualty Co. of Illinois v. Juhl*, 669 N.E.2d 1211, 1214 (Ill. App. 1996); *Hartford Accident & Indemnity Co. v. Rush-Presbyterian-St. Luke's Medical Center*, 595 N.E.2d 1311, 1316 (Ill. App. 1992); *Highlands Ins. Co. v. Lewis Rail Service Co.*, 10 F.3d 1247, 1249-50 (7th Cir. 1993) (Illinois law).

The insurer's duty of good faith is not onerous. When the company is handling the defense of a suit against its insured at its own cost and initially believes there's no danger of an excess judgment against the insured, it has every incentive to monitor the progress of the litigation closely, for realistically it is the sole defendant. And monitoring the litigation places the insurer in a good position to learn about a conflict of interest if and when one arises. At that point, given the duty of good faith, it is strongly motivated to notify the insured of the conflict immediately lest it find itself liable not only for the excess judgment but also for punitive damages, which are awarded for egregious breaches of good faith. E.g., *O'Neill v. Gallant Ins. Co., supra*, 769 N.E.2d at 109-12; *Twin City Fire Ins. Co. v. Country Mutual Ins. Co., supra*, 23 F.3d at 1179-80 (Illinois law).

Often notice proves costless to the insurance company. Rather than change lawyers in midstream and perhaps have a dispute with the insurer over whether the new lawyer's fee is "reasonable" and hence chargeable to the insurer, the insured is quite likely to take his chances on staying with his insurer-appointed lawyer, Pryor & Silver, *supra*, 78 *Tex. L. Rev.* at 662-63, and so decide to waive the conflict of interest, relying on the fact that the lawyer "remains bound, . . . both ethically and legally, to protect the interests of the insured in the defense of the tort claim. The latter obligation is separate and distinct from the insurer's duty to inform the insured of its position, and is not waived, as defendant's argument suggests, by mere acquiescence to the conduct of the insurer." *Cowan v. Ins. Co. of North America*, 318 N.E.2d 315, 326 (Ill. App. 1974). The insurance company can satisfy its duty of good faith at the price of a phone call.

Admiral's main argument is that an insurance company has no duty to notify the insured of a potential conflict of interest, only of an actual one, and that no conflict arises until settlement negotiations begin or the insured demands that the insurance company try to settle the case. Admiral attempts to bolster the argument by claiming that until then the insurer has no duty of notice to the insured because it would be unethical for it to interfere with the lawyer's representation of the insured because an insurance company isn't allowed to practice law.

Admiral misunderstands "conflict of interest." The term doesn't mean that the conflicted party is engaged in

conduct harmful to another party. It means that their interests are divergent, which creates a potential for such harm. The conflict in this case arose when Admiral learned that an excess judgment (and therefore a settlement in excess of the policy limits, as judgment prospects guide settlement) was a nontrivial probability in Budrik's suit. Admiral's contention that it would have been practicing law had it notified Wegman of the risk of excess liability is ridiculous. What is true is that, had Admiral notified Wegman of the risk and as a result Wegman had hired its own lawyer, Admiral could not have interfered with Wegman's relation with that lawyer. *Brocato v. Prairie State Farmers Ins. Ass'n*, 520 N.E.2d 1200, 1203 (Ill. App. 1988), on which Admiral relies heavily, as did the district court, says that the insurer has no "right to control or supervise the actual conduct of any litigation." But the insurer had agreed merely to pay the insured's attorney, rather than handle the defense. See also *Stevenson v. State Farm Fire & Casualty Co.*, 628 N.E.2d 810, 811-12 (Ill. App. 1993); *Transport Ins. Co. v. Post Express Co.*, *supra*, 138 F.3d at 1193 (Illinois law). Controlling the defense, Admiral had a duty to warn Wegman when that control created a conflict of interest.

Wegman's complaint is less clear than it could be. It doesn't actually allege that it didn't learn until days before the trial that Budrik's injuries were so serious that a judgment in excess of $1 million was in the cards—only that it failed to "realize" until then that it faced such a danger. If it knew everything Admiral should have told it but didn't tell it, and knew all that in time to have triggered its excess coverage, and it just

didn't put two and two together and get four, then Admiral's breach of duty did not harm it and the case should indeed have been dismissed. But there is no evidence of this; there is just Admiral's attempt to build a concession on the word "realize." It's unlikely that had Wegman known it faced a judgment in excess of the limits of Admiral's policy, it would have failed to notify its excess insurer. Being only one of several defendants in Budrik's suit and relying on Admiral's duty of good faith notification of any conflict of interest, Wegman reasonably could assume that until told otherwise it had no skin in the game and therefore no need to follow the litigation closely.

Admiral suggests that the lawyer it appointed to represent Wegman had the duty to notify Wegman of the risk of an excess judgment, rather than Admiral. But as far as we know, the lawyer informed Admiral, knowing that Admiral would be duty-bound to inform Wegman. The lawyer may have fallen down on the job and notified no one; we've not been told what Wegman alleges in its suit against the lawyer. But the duty to notify of a conflict of interest is also the insurer's, and cannot be contracted away without the insured's consent. Admiral may have a right of contribution or indemnity by the lawyer if the latter failed to inform Admiral of the risk of excess liability, but that would not affect Admiral's liability to Wegman.

Ordinarily in a case such as this, the insured would have to prove that had it not been for the breach of duty by the insurance company, the case could have been

settled within the policy limit, or at least for a lower amount than the judgment. *LaRotunda v. Royal Globe Ins. Co.*, *supra*, 408 N.E.2d at 935-37; *Meixell v. Superior Ins. Co.*, 230 F.3d 335, 337 (7th Cir. 2000) (Illinois law). Wegman will try to prove this and may succeed. But there is an additional wrinkle that may make such proof inessential. For remember that had Admiral warned Wegman of the likelihood of an excess judgment, Wegman would have sought and obtained coverage under its excess policy, and thus been freed from liability regardless of the outcome of Budrik's suit.

It could be argued on the authority of *Gorris v. Scott*, 9 L.R. Exch. 215 (1874), and the numerous cases following it, see, e.g., *St. Louis & San Francisco R.R. Co. v. Conarty*, 238 U.S. 243, 249-50 (1915); *Aguirre v. Turner Construction Co.*, 582 F.3d 808, 815 (7th Cir. 2009); *Thomas v. City of Peoria*, 580 F.3d 633, 636 (7th Cir. 2009); *Shadday v. Omni Hotels Management Corp.*, 477 F.3d 511, 517 (7th Cir. 2007); *Movitz v. First National Bank of Chicago*, 148 F.3d 760, 762-63 (7th Cir. 1998); *Holster v. Gatco, Inc.*, 618 F.3d 214, 217 (2d Cir. 2010); *Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234, 237 and n. 3 (2d Cir. 1996), that the loss of an opportunity to trigger excess coverage is not the kind of loss that the duty of good faith is intended to prevent, and so that duty was not breached by Admiral. But the argument would fail. For when a conflict of interest arises, so that the insured can no longer count on the insurance company and its lawyer to defend his interests but must (unless he wants to waive his rights) fend for himself, the hiring of his own lawyer is only one option that is opened up to him. Another is to seek addi-

tional coverage from another insurance policy; and that alternative was foreclosed by the failure of no-tice—assuming Wegman was indeed innocently ignorant of the substantial risk of an excess judgment until the eve of trial, as it alleges.

Allegation is not proof. The merits of Wegman's claim remain to be proved. But dismissal of the complaint was premature. The judgment is therefore reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.