NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

U.S. Court of Appeals for the First Circuit
No. 2015-0123



OLD REPUBLIC INSURANCE COMPANY

v.

STRATFORD INSURANCE COMPANY

Submitted: September 10, 2015
Opinion Issued: January 26, 2016


Getman, Schulthess, Steere & Poulin, P.A., of Manchester (Naomi L. Getman), for the plaintiff, filed no brief.


Barclay Damon, LLP, of New York, New York (Laurence J. Rabinovich on the brief), and Devine Millimet & Branch, P.A., of Manchester (Richard C. Nelson on the brief), for the defendant.


Hoefle, Phoenix, Gormley & Roberts, P.A., of Portsmouth (Stephen H. Roberts on the brief), and Wiley Rein LLP, of Washington, D.C. (Laura Foggan on the brief), for Complex Insurance Claims Litigation Association, as amicus curiae.

BASSETT, J. Pursuant to Supreme Court Rule 34, the United States Court of Appeals for the First Circuit (Lynch, C.J.) certified to us the following questions:

> Under New Hampshire law, when is an excess insurer's duty to defend triggered? Does New Hampshire follow the general rule that the excess insurer's duty to defend is triggered only when the primary insurer's coverage is exhausted? If not, what rule as to allocation of defense costs and timing of payment does New Hampshire follow?

We respond that, under New Hampshire law, the excess insurer's duty to defend is triggered only when the primary's insurer's coverage is exhausted.

The First Circuit's order sets forth the following facts. This case concerns a dispute between Old Republic Insurance Company and Stratford Insurance Company as to their respective coverage and defense obligations arising out of a motor vehicle accident involving their insureds. Old Republic and Stratford each provided insurance coverage for a tractor-trailer that collided with a passenger vehicle. The owner of the tractor, Ryder Truck Rentals, had purchased an insurance policy from Old Republic. DAM Express, a for-hire motor company, had leased the tractor from Ryder. Although, pursuant to the lease agreement, Ryder was responsible for obtaining liability insurance for the tractor, DAM also purchased a separate insurance policy from Stratford. When the collision occurred, the driver of the tractor-trailer was employed by DAM, and the trailer was owned by Coca-Cola.

The persons injured in the collision with the tractor-trailer sued the driver, DAM, Ryder, and Coca-Cola, seeking an unspecified amount of damages. As required by its policy with Ryder, Old Republic began providing a defense for Ryder, DAM, and the other defendants, and asked Stratford to help pay the defense costs. Stratford refused, stating that it had "no obligation to share in the cost of defending or indemnifying its insureds" because any coverage provided by Stratford "to either DAM or [the driver]" was "excess to the coverage provided by . . . Old Republic." (Quotation omitted.)

Old Republic then sued Stratford, seeking a declaratory judgment that Stratford had an obligation, as a co-primary insurer, to provide coverage and pay a portion of the defense costs. Stratford filed a counterclaim, seeking a declaratory judgment that Old Republic was the primary carrier and that Stratford provided only excess coverage. The United States District Court for the District of New Hampshire (McCafferty, J.) ruled that Old Republic provided primary coverage and Stratford provided excess coverage. Old Republic Ins. Co. v. Stratford Ins. Co., No. 12-cv-256-LM, 2014 WL 309390, at *6 (D.N.H. Jan. 27, 2014). Citing our decision in Universal Underwriters Insurance Co. v. Allstate Insurance Co., 134 N.H. 315 (1991), the district court also concluded

2

that, because, under New Hampshire law, "the duty of an insurer to defend is the same whether its potential liability is either as a primary or as an excess carrier," Stratford, as the excess insurer, was "obligated to share equally in the costs of defending its insureds in the underlying action." Old Republic Ins. Co., 2014 WL 309390, at *7 (quotation omitted). In its denial of Stratford's motion to amend judgment, the district court explained that although, "if presented with the precise facts of this case, the New Hampshire Supreme Court might be inclined to revisit Universal Underwriters," the district court was "obligated" to rule that Stratford and Old Republic share defense costs equally "given the law as currently enunciated by the New Hampshire Supreme Court."

Both parties appealed the decision to the First Circuit. The First Circuit upheld the district court's conclusion that Old Republic provided primary coverage and Stratford provided excess coverage. Old Republic Ins. Co. v. Stratford Ins. Co., 777 F.3d 74, 86 (1st Cir. 2015). As to Stratford's defense obligations, the First Circuit stated that the question of when an excess insurer's duty to defend is triggered is an "important[] and unsettled[] question of New Hampshire law," id., and, therefore, the "best course of action is to certify this question . . . to the New Hampshire Supreme Court," id. at 76. This certification followed.

As we recently observed in Progressive Northern Insurance Co. v. Argonaut Insurance Co., 161 N.H. 778, 784 (2011), "we have never addressed the precise issue of allocation of defense costs between a primary insurer and an excess insurer." See also Calabraro v. Metropolitan Prop. & Cas. Ins. Co., 142 N.H. 308, 311 (1997) (describing Universal Underwriters as a case "discussing two policies that contained conflicting excess coverage provisions"). We now have the occasion to address this issue, and adopt the majority rule that "[w]here an insured is covered by both a primary policy and an excess policy . . . the excess liability carrier is not obligated to participate in the defense until the primary policy limits are exhausted." 14 L. Russ & T. Segalla, Couch on Insurance 3d § 200:41 (2007); see Travelers Cas. v. American Intern. Surplus Lines, 465 F. Supp. 2d 1005, 1028 (S.D. Cal. 2006) ("A secondary insurer has no duty to defend or to indemnify until all of the primary insurance has been exhausted." (quotation and emphasis omitted)); Texas Employers Ins. v. Underwriting Members, 836 F. Supp. 398, 404-05 (S.D. Tex. 1993) (collecting cases).

"Where [there] is more than one insurer which covers the same risk, courts will generally look to the terms of the respective policies to determine who will act as the primary insurer for purposes of providing a defense." Couch on Insurance 3d, supra § 200:35. Under the majority rule, the "primary insurer generally has the primary duty to defend the insured, unless otherwise excused or excluded by specific policy language." Id.; see Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 173 (3d Cir. 1987) (holding that

insurer with primary indemnity obligation also has primary responsibility to defend); Sport Rock Int'l, Inc. v. American Cas. Co. of Reading, PA, 65 A.D.3d 12, 13 (N.Y. App. Div. 2009) ("Consistent with longstanding precedent, we hold that the carrier whose coverage is rendered excess by reason of the competing 'other insurance' clauses will not become obligated to defend the insured until the other carrier's coverage has been exhausted."). "Excess carriers generally are not required to contribute to the defense of mutual insureds so long as the primary insurer bears the duty to defend and the primary policy limits have not been exhausted." Holmes Grp., Inc. v. Fed. Ins. Co., Civil Action No. 03-11671-NG, 2005 WL 4134556, at *8 (D. Mass. Oct. 5, 2005); see Signal Companies v. Harbor Ins. Co., 612 P.2d 889, 894 (Cal. 1980) (en banc) (observing that "where there is excess coverage, whether by virtue of an excess clause in one policy or otherwise it is the primary insurer which is solely liable for the costs of defense if the judgment does not exceed primary coverage"); see also Schneider Nat. Transport v. Ford Motor Co., 280 F.3d 532, 538 (5th Cir. 2002) (adopting majority rule).

In New Hampshire, "[t]he fundamental goal of interpreting an insurance policy, as in all contracts, is to carry out the intent of the contracting parties." Bartlett v. Commerce Ins. Co., 167 N.H. 521, 530 (2015) (quotation omitted). The rule that we adopt today serves this purpose by effectuating the intent of primary and excess insurers that provide different levels of coverage for the same insured as part of a comprehensive risk management scheme. See Marick, Excess Insurance: An Overview of General Principles and Current Issues, 24 Tort & Ins. L.J. 715, 715-19 (1989).

The majority rule reflects how the insurance system operates, how companies manage risk, and how insurers market and price their policies. For instance, the primary insurer — given its obligation to defend — controls the defense of a claim and its costs. See Couch on Insurance 3d, supra § 200:1 (insurer's duty to defend accompanied by "exclusive control over [the] litigation"). "If a claim against an insured is covered by the insurance policy, the insurer has a vital interest in supervising the defense against the claim, for its money is riding on the outcome." AU Electronics, Inc. v. Harleysville Group, Inc., 82 F. Supp. 3d 805, 814 (N.D. Ill.) (quotation omitted), appeal dismissed (7th Cir. 2015). Allowing primary insurers to assume exclusive control of the litigation enables them "to protect their financial interest in the outcome of litigation and to minimize unwarranted liability claims." R.C. Wegman Const. Co. v. Admiral Ins. Co., 629 F.3d 724, 728 (7th Cir. 2011) (quotation omitted). It also "safeguards the orderly and proper disbursement of large sums of money involved in the insurance business." Id. (quotation omitted). Until the excess insurer has indemnity exposure, there is no reason it should have a role in making strategic decisions regarding the defense of an insured, nor should it be required to pay a share of the defense costs.

4

Moreover, because "it is principally the obligation of the primary insurer to defend lawsuits against the insured," and, in most cases, "the excess insurer does not undertake the insured's defense," Marick, supra at 721, excess policies are priced to reflect the reduced expenditures that excess insurers are likely to incur. See Padilla Const. Co. v. Transportation Ins. Co., 58 Cal. Rptr. 3d 807, 821 (Ct. App. 2007) ("[D]efense obligations of an excess policy [are] far less likely to be triggered, and that improbability is reflected in a cheaper premium."); see also Associated Wholesale Grocers v. Americold, 934 P.2d 65, 81 (Kan. 1997) (comparing annual premium of $121,500 for $25 million of excess coverage with annual premium of $232,077 for $1 million of primary coverage); Aetna Insurance Company of Hartford v. Kent, 540 P.2d 1383, 1387 (Wash. 1975) (en banc) (looking to "gross disparity in premium costs" as "clear evidence" that two policies "were not intended to provide the same coverage"). Requiring an excess insurer to share defense costs equally with a primary insurer — regardless of whether the excess insurer's indemnity obligations had been triggered — would undermine this pricing structure. Accordingly, we join those courts that have held that an excess insurer has no duty to defend a claim until the primary insurer's coverage has been exhausted.

We note that our holding in Universal Underwriters regarding the allocation of defense costs has sometimes been read to conflict with the majority rule. See, e.g., Universal Underwriters v. Travelers Ins., 669 A.2d 45, 49 (Del. 1995) (describing New Hampshire as a "jurisdiction[] which divide[s] defense costs equally between primary and excess insurers"). However, in Universal Underwriters, we addressed the allocation of defense costs between two co-primary insurers, rather than between a primary insurer and an excess insurer. See Universal Underwriters Ins. Co., 134 N.H. at 318. We concluded that, because "the excess coverage provisions in the two policies [were] mutually repugnant and must be disregarded," Universal Underwriters Insurance Company and Allstate Insurance Company were co-primary insurers and each was obligated to share equally in the costs of defending the insureds. Id. at 318-19 (quotation omitted); see, e.g., Peerless Ins. v. Vt. Mut. Ins. Co., 151 N.H. 71, 74 (2004) ("[A]s we assign the same priority to the excess insurance provisions of Peerless' and Vermont Mutual's insurance policies, we conclude that the excess provisions are mutually repugnant, and order that each insurer . . . share equally in defense costs."); Baker v. Allied Property and Cas. Ins. Co., 939 F. Supp. 2d 1091, 1098 (D. Colo. 2013) ("Competing excess clauses [that] are mutually repugnant . . . act to cancel each other out, and the insurers are considered co-primary . . . ." (quotation and citation omitted)); Owners Ins. Co. v. State Auto Property & Cas. Co., 977 F. Supp. 2d 708, 714 (W.D. Ky. 2013) (applying "the longstanding mutual repugnancy rule . . . which requires each policy to share the loss on a co-primary basis"). Thus, our statement in Universal Underwriters regarding the respective defense duties of primary and excess insurers was dicta, and does not control the resolution of the questions before us.

For the foregoing reasons, we answer the certified questions as follows: under New Hampshire law, the excess insurer's duty to defend is triggered only when the primary insurer's coverage is exhausted.

<u>Remanded</u>.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.